California Institution for Men
Bruce Koklich v-25135
P.O. Box 3100
Chino, CA. 91708

FULL NAME
California Institution for Men (CIM)

Lawrence Remsen C-67186
P.O. Box 3100
FULL ADDRESS INCLUDING NAME OF INSTITUTION
Chino, CA. 91708

See Above

PRISON NUMBER (if applicable)

---

**FILED**
CLERK, U.S. DISTRICT COURT

**4/5/24**

CENTRAL DISTRICT OF CALIFORNIA
BY:     eee     DEPUTY

---

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Bruce Koklich and Lawrence Remsen

PLAINTIFF,

v.

GAVIN NEWSOM et al., and DOES
One through TWENTY inclusive.

DEFENDANT(S).

CASE NUMBER **5:24-cv-00721-FLA-MAA**

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** *(Check one)*

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

---

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes   ☐ No

2. If your answer to "1." is yes, how many? <u>Two from Koklich</u> and Two from Remsen

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

1. Bruce Koklich is a potential Class Representative along with five other potential Class Representatives. The Defendants were originally five prison employees who are involved in knowingly distributing contaminated drinking water to prisoners. Central District case No. 5:18-cv-02388-TJH-AGR. The judge is Terry Hatter and the Magistrate is Alicia Rosenberg. Case is still pending with retained counsel. The second case is a § 1983 case filed September 21, 2023 and is a Rule 71 Class case regarding improper taking of Good-Time credits. Case is 5:23-cv-01994. The judge is Sunshine Suzanne Sykes. Case is on Appeal to the 9th Cir. Docket # is 23-379 and was docketed on Nov. 22, 2023.

2. Lawrence Remsen is a Plaintiff with Schools First Credit Union et al., as Defendants. Central District case No. is 2:23-cv-06109-CAS-JPK. The Judge is Maame Ewusi-Mensah, case is still pending judical response on the First Amended Complaint. Case is regarding breach of contract under Color of State Law in violation of Article I § 10; 5th and 14th Amendment violations as well as a violation of State Constitution Cal. Const. Art. § 9. Case was filed on August 2, 2023. The second case is § 1983 case filed September 21, 2023 and is a Rule 71 Class case regarding improper taking of Good-Time credits. Case is on Appeal to the 9th Cir. Docket # is 23-379 and was docketed on Nov. 22, 2023.

[Pg.1 of 27]

a. Parties to this previous lawsuit:
   Plaintiff _Bruce Koklich, Christopher Camp, Ron Austin etal._

   Defendants _Dean Borders et al.,_

b. Court _Central District, Western Division._

c. Docket or case number _5:18-cv-02388-TJH-AGR_

d. Name of judge to whom case was assigned _Andrew Barotti_

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _Case is still pending with counsel._

f. Issues raised: _§ 1983 with multiple COAs including, Elder Abuse, Toxic Tort Discrimination et al._

g. Approximate date of filing lawsuit: _December of 2018_

h. Approximate date of disposition _Class still has not been certified and Judge Hatter is not happy with counsels efforts to certify class_

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes ☒ No

   If your answer is no, explain why not _1. § 1983 Plaintiff does no have to file an administrative remedy. 2. Declarative and Injunctive Relief also not required to exhaust administrative remedies._

3. Is the grievance procedure completed? ☐ Yes ☒ No

   If your answer is no, explain why not _See Answer at # 2 above._

4. Please attach copies of papers related to the grievance procedure. _N/A_

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _Bruce Koklich and Lawrence Remsen_
(print plaintiff's name)

who presently resides at _P.O. Box 3100_
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
_California Institution for Men (CIM) at 14901 Central Ave. Chino, CA. 91710_
(institution/city where violation occurred)

[Pg.2 of 27]

on (date or dates) __11/31/2023 and continuing & Multiple Constitutional Violations__
(Claim I)                           (Claim II)                        (Claim III)

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant __Kathleen Allison - Director /Secretary of CDCR__ resides or works at
(full name of first defendant)
__1515 "S" Street, Sacramento, CA. 95811__
(full address of first defendant)
__California Department of Corrections and Rehabilitation (CDCR) Director__
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:
__Intentionally failed to properly and legally administer Plaintiff's sentences__
__and unlawfully failed to apply Plaintiff's Good-Time and Participation credits__

2. Defendant __Jennifer Shaffer - Chief Executive Officer of the BPH__ resides or works at
(full name of first defendant)
__P.O. Box 4036, Sacramento, CA. 95811__
(full address of first defendant)
__Executive Officer of the Board of Parole Hearings (BPH)__
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:
__Usurped CDCR statutory authority and acted in excess of her jurisdiction by__
__holding unlawful Parole hearings for a Class of inmate expressly excluded.__

3. Defendant __Rob Bonta - Attorney General of California__ resides or works at
(full name of first defendant)
__1300 "I" Street, Suite 125, Sacramento, CA. 94244-2500__
(full address of first defendant)
__Attorney General of the State of California__
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:
__Intentionally failed to comply with his mandatory duty to enforce the law and__
__allowed Plaintiffs credits to be unlawfully taken without a hearing.__

CV-66 (7/97)

4.  Defendant   Gavin C. Newsom, Governor of California _____ resides or works at
    (full name of first defendant)

    State Capitol, First Floor, Sacramento, CA. 95814
    (full address of first defendant)

    Governor of the State of California
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Failed to assure that California Law were uniformity enforced by agencies

under his authority in accordance Pen. Code § 1170(a)(1) Stats 1977 Ch.165 § 15

5.  Defendant   Patrica Guerrero, Judge _____ resides or works at

    (full name of first defendant)
    350 McAllister St., San Francisco, CA. 94102-4797

    (full address of first defendant)

    Chief Justice, California Supreme Court
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Defendant acted under color of law when she transformed Plaintiffs Declaratory

and Injunctive Complaint into a Writ of Mandate in violation of the State
Constitution, then illegally failed to hear the case on the merits in violation
of both state and federal constitutional law.

CIVIL RIGHTS COMPLAINT

CV-66 (7 97)

## D. CLAIMS*

**CLAIM I**

The following civil right has been violated:

See: pages 17-19 in attached formal pleading

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

See: pages 13-17 in attached formal pleading

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

[Pg.5 of 27]

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

See: pages 26 & 27 in attached formal pleading

Jan. 4, 2024
*(Date)*

Jan. 4, 2024
*(Date)*

Bruce    (Signature of Plaintiff)   Koklich

Lawrence    (Signature of Plaintiff)   Remsen

[Pg.6 of 27]

CIVIL RIGHTS COMPLAINT

CV-66 (7 97)

C A S E   N O.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

BRUCE KOKLICH & LAWRENCE REMSEN, Plaintiffs, in Pro Se,

vs.

KATHLEEN ALLISON, CDCR Sec.: JENNIFER
SHAFFER, Executive Officer of the BPH;
ROB BONTA, (A), Cal. Attorney General;
JOHN MERCHANT, CIM Warden; & GAVIN C.
NEWSOM et al, Governor of the State of
California,

Defendants, et al.

42 USCS 1983 & 28 USCS 2201-2202
FOR DECLARATIVE & INJUNCTIVE RELIEF.

Bruce Koklich,   V-25135
Lawrence Remsen, C-67186
Alpha - 7 (CIM)
Post Office Box No. 3100
Chino, California  91708

[Pg. 7 of 27]

§ 1983 TABLE OF CONTENTS
CALIFDORNIA SUPREME COURT (CSC) ABUSE

Pg. No.

PRO SE' § 1983 CV-66 Form . . . . . . . . . . . . . . . . . . . . .-> 1-6

TITLE PAGE- FORMAL PLEADING . . . . . . . . . . . . . . . . . . .-> 7

§ 1983 TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . .-> 8

§ 1983 TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . .-> 9 & 10

I.   QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . .-> 11

II.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . .-> 12

III. PROCEDURAL HISTORY AND STATEMENT OF JURISDICTION . . . . . . .-> 12

IV.  STATEMENT OF FACTS AND LAW . . . . . . . . . . . . . . . . .-> 13

VI.  ARGUMENT - GROUNDS FOR REVERSAL. . . . . . . . . . . . . . .-> 17

   A.   DID THE CSC ABUSE IT'S DISCRETION WHEN IT FAILED TO
        RULE ON THE MERITS AND TRANSFORMED THE DIR PROCEDURAL
        DEVICE INTO A WRIT OF MANDATE. . . . . . . . . . . . . . .-> 17

   B.   ILLEGAL GOOD-TIME CREDIT TAKING WITH OUT A HEARING . . . . .-> 19

   C.   PLAINTIFFS WERE SPECIFICALLY GRANTED GOOD-TIME CREDITS
        UNDER THE DETERMINATE SENTENCING LAW. THE CSC WAS
        SPECIFICALLY SILENT ON HOW OR WHEN THE INDETERMINATE
        SENTENCING LAW (ISL) WAS REENACTED FOR CATEGORY 4
        OR LESS CRIMES . . . . . . . . . . . . . . . . . . . . . .-> 20

   D.   COURT IS OBLIGATED TO PROVIDE A HEARING ON SERIOUS
        STRUCTURAL DEFECT IN SENTENCING OF THOUSANDS OF
        CALIFORNIA PRISONERS DOCUMENTING A SERIOUS
        MISCARRIAGE OF JUSTICE . . . . . . . . . . . . . . . . . .-> 24

VII. PRAYER FOR RELIEF AND CONCLUSION . . . . . . . . . . . . . .-> 26

VII. VERIFICATION - 28 U.S.C. § 1746. . . . . . . . . . . . . . .-> 27

   TABLE OF APPENDICES. . . . . . . . . . . . . . . . . . . . . .-> i

[Pg.8 of 27]

Case Name          § 1983 TABLE OF AUTHORITIES  (Pages 1 of 2)          Page No.

Alleyne v. United States,
    133 S.Ct. 2151, 2155-65 [186 L.Ed. 315] (2013). . . . . 17 & 25

Armstrong v. Davis
    275 F.3d 849, 856 [2001 U.S. App. LEXIS 25298] (2001) . 17 & 23

Deputy Sheriffs' Assn. of San Diego County v. County of San Diego,
    223 Cal.App.4th 573, 578 [182 Cal.Rptr.3d 759] (2015). . . . 27

Fairbank v. United States,
    181 U.S. 283, 294 [21 S.Ct. 648] (1901). . . . . . . . . . 24

Garcia v. United States,
    528 F.Supp.814, 817 [82 U.S. Dist. LEXIS 12474] (1982) . . . 26

Floyd v. Banding,
    54 Cal. 41 43 (1879) . . . . . . . . . . . . . . . . . 27

Gibbs v. City of Napa,
    59 Cal.App.3d 148, 153 [130 Cal.Rptr. 382] (1976). . . . 14 & 16

Gonzalaz v. Borla,
    2023 U.S. Dist. LEXIS 214110 at *2 (2023) . . . . . . . . 20

In re Carl Lee Gray,
    85 Cal.App.3d 255, 259 [149 Cal.Rptr.] (1978) . . . . . . 21

In re Jeanice D.,
    28 Cal.3d 210, 213 [168 Cal.Rptr. 455] (1980) . . . . . Passim

In re Stanworth,
    33 Cal.3d 176, 181-183 [183 CR 783] (1982) . . . . . . 21 & 25

Maine v. Thiboutot,
    448 U.S. 1, 20-21 [100 S.Ct. 2402] (1980). . . . . . . 18 & 22

Neff v. UNUN Provident Corp.,
    2015 U.S. Dist. LEXIS 110026 at *17 [2015 WL 5036390] (2015)  19

Nettles v. Grounds,
    830 F.3d 922, 935 (2016) . . . . . . . . . . . . . . . 20

People v. King,
    5 Cal.4th 59, 66 [851 P.2d 27] (1993). . . . . . . . . . .22

Palermo v. Stockton Theaters Inc.,
    32 Cal.2d 53, 58-59 [195 P.2d 1] (1948). . . . . . . . . 14

People v. Saffell,
    25 Cal.3d 223, 236 [157 CR 897] (1979) . . . . . . . . . 13

People v. West,
    70 Cal.App.248, 256 [1999 Cal.App. LEXIS 158] (1999) . . . . 21

Steffell v. Thompson,
    415 U.S. 452, 454 [94 S.Ct. 1209] (1974) . . . . . . . . 26

The Fair Kohler Die & Specialty Co.,
        228 U.S. 22, 25 [33 S.Ct. 410] (1913). . . . . . . . . .        17

Thome v. Macken,
        58 Cal.App.2d 76 [136 P.2d 116) (1943). . . . . . . . . .        14

Tome v. Gastelo,
        2019 U.S. Dist. LEXIS 29655 at *31 (2019) . . . . . . . .        21

Twin City Pipe Line Co. v. Harding Glass Co.,
        283 U.S. 353, 357 [51 S.Ct. 476] (1931) . . . . . . . . .        14

United States v. Classic,
        313 U.S. 299, 326 [61 S.Ct. 1031] (1941). . . . . . . . .        18

William Young v. Jacquez,
        2023 U.S. Dist. LEXIS 200570 at *2 (2023) . . . . . . . .        20

Wolff v. McDonnell,
        418 U.S. 538, 553-557 [94 S.Ct. 2063] (1974). . . . . . .        15


                    CALIFORNIA AND UNITED STATES CONSTITUTIONS
Cal. Const. Art.  I   § 9                                               19
Cal. Const. Art.  I   § 28                                              11
Cal. Const. Art.  II  § 8                                               24
Cal. Const. Art.  III § 3                                              11
Cal. Const. Art.  IV  § 9                                              24
Cal. Const. Art.  IV  § 15                                             13
Cal. Const. Art.  VI  § 13                                             12
Cal. Const. Art.  VI  § 14                                     12 & 23,

Magna Carta Rule 45                                                    17
U.S. Const. 11th Amendment                                             26
U.S. Const. 14th Amendment                                             26


                              BILLS AND STATUTES
Cal. Gov. Code § 815.6                                                 11
28 U.S.C. § 1746                                                       27
28 U.S.C. § 2201 & 2202 Federal DIR Statute                           27
42 U.S.C. § 1983                                                  Passim

SB-42 Determinate Sentencing Law            13, 15, 16, 20, 23 & 24
AB-476 Stats 1976 Ch.1139 § 273             13, 15, 16, 20 & 23
Penal Code § 12 & 13                                                  25
Penal Code § 190                                                 15 & 23
Penal Code § 190.4 - Grater Crime with Lesser flat term of 25         15
Penal Code § 187                                                     23
Penal Code § 1170(a)(1) Stats 1977 Ch.165 §15            11, 13 & 24
Penal Code § 1170.2                                                  23
Penal Code § 2931 Codified Good-Time Credit authority    11, 14, 25 & 27
Proposition Seven (Prop. 7)                              11, 14, 15, 16 & 18

                                 TREATISE
16 AM Jur.2d § 23 (1998)                                              17
Rule 60 Baylor L. Rev. 993, 999                                      12
Witkin & Epstein Crim. Law 2nd Vol. §§ 1554-1557                       8

I.  QUESTIONS PRESENTED to the

CENTRAL DISTRICT COURT (CDC) REGARDING
VIOLATIONS OF BOTH STATE AND FEDERAL CONSTITUTIONS
AND FEDERAL AUTHORITY BY CALIFORNIA SUPREME COURT (CSC)

1.  Did the CSC violate both State and Federal Constitutions (See: Cal. Const. Art I § 28(b)(8) & Art. VI § 14) and United States Supreme Court (USSC) controlling authority when the CSC refused to issue a decision on the merits knowing there was a lack of jurisdiction over the repealed ISL and its sentencing structure which continues to be in direct conflict with the Legislative Declaration stating the Purpose and Policy of the Determinate Sentencing Law.

2.  Did the CSC violate Bruce Koklich and Lawrence Remsen's First Amendment Right under color of State Law to Petition for Declaratory and Injunctive Relief (DIR) when they had their contract and liberty interest at stake violated when the Defendants failed to enforce the provisions of the law and unlawfully took their earned Pen. Code § 2931 Good-Time and participation credits taken without notice or a hearing?

3.  Did the CSC justices lose their immunity when, under color of state law, they failed to follow the Legislative Declaration in Pen. Code § 1170(a)(1) and issue a merits opinion on the DIR in violation of USSC and CSC auathority (See: Cal.Gov. Code §815.6 Cf. Cal. Const. Art. VI § 14; Cf. Stats 1977 Ch.165 § 15)?

4.  Did the CSC abuse it's discretion and under color of state law, disregarded the indisputable fact that the California Legislature had repealed the States Indeterminate Sentencing Law (ISL) and Replaced it with the Determinate Sentencing Law (DSL) knowing that changing Legislative Policy is not subject to the initiative process and in order to reenact the ISL the Voters would have had to reenact the repealed ISL along with its purpose and policy and this never happened.  Does this fact entirely and completely eliminate the Judicial branches jurisdiction to sentence persons to uncertain punishment for the offense to be decided by the same branch of government charged with the person's prosecution (See: Cal. Const. Art. IV § 9 & Art. III § 3)?

5.  Did the CSC violate and ignore State and Federal authority when they knew that State Legislator Briggs could not lawfully use the initiative process via Proposition Seven (Prop.7) when he did not have the votes for a Referendum, to circumvent DSL Legislative Policy (passed as an urgency measure) which mandated the Repeal of the ISL and the codification of the DSL for all crimes, and are Plaintiff's entitled to a Jury Trial to establish a lack of jurisdiction based on federal law?

6.  Did the CSC establish its abuse of discretion under color of state law when it acted with a lack of jurisdiction, violated the Rule of Law, and ignored controlling USSC and CSC precedent which forbids the use of an Executive Branch Non-Constitutional Ministerial Agency to fix or extend inmate prison terms before and after there term fixing and extending power and jurisdiction were repealed in violation of the Eighth and Fourteenth Amendments as well as Alleyne, Infra.?

## II. INTRODUCTION

1. BRUCE KOKLICH and LAWRENCE REMSEN collectively (Plaintiff's) are also unlawfully and wrongly labled as Respondents in the above entitled matter as Plaintiff's Complaint was wrongfully transformed from a Complaint for Declaratory and Injunctive Relief (DIR) into a Writ of Mandate by the Judicial Branch Defendant, Chief Justice of the California Supreme Court (CSC) Patricia Guerrero acting in her individual capacity in violation of USSC presedent. The additional and culpable Executive Branch Defendants acting outside or in conflict with their conferred authority are: KATHLEEN ALLISON, Executive Secretary of the California Department of Corrections and Rehabilitation ("Allison or CDCR"); JENNIFER SHAFFER, Senior Executive Officer of the state parole agency aka. Board of Parole Hearings ("Shaffer or BPH"); ROB BONTA, California Attorney General ("Bonta or AG") and GAVIN NEWSOM Governor of the State of California ("Newsom or Governor") collectively (Defendants).

2. The Central District Court ("CDC") has jurisdiction and standing to decide State Law Issues when the Supreme Court of the State fails to follow statutory law and unlawfully acts under color of law to violate the state constitution and Plaintiff's civil rights by refusing to issue decision on the merits (See: Cal. Const. Art. VI §§ 13 & 14). Plaintiffs case shows that a Civil Rights case can proceed when Defendants, et al., act under the color of state law refuses to follow state law and decide the case on the merits in violation of the California Constitution and Federal auathority.

## III. PROCEDURAL HISTORY AND STATEMENT OF JURISDICTION

3. Plaintiff's filed their Initial Complain for Declaratory and Injunctive relief on June 14, 2023. The CSC Defendant unlawfully

[Pg.12 of 27]

1    transformed Plaintiff's Declaratory and Injunctive Complaint (hereinafter

2    "DIR") on July 7, 2023.  Defendants CSC wrongfully dismissed the now

3    transformed DIR to a Writ of Mandate and denied it on November 1, 2023.

4                 IV.   STATEMENT OF FACTS AND LAW

5        4.  On March 26, 1975 the California Department of Justice Attorney

6    General Evelle Younger stated the Indeterminate Sentencing Law (ISL) was a

7    failed experiment and expressed his support for Senate Bill 42 (SB-42)

8    which repealed the ISL in California and provided a "Seven Category

9    Sentencing Structure" of Determinate and fixed prison terms aka. the

10   Determinate Sentencing Law (DSL) (See: Appendix # 1 at Pg.2).

11       5.  On September 1, 1976 California Legislator John v. Briggs issued a

12   strongly worded "most violent crime wave California has ever experienced"

13   letter to then Governor Jerry Brown in an attempt to unlawfully influence

14   Governor Brown to veto SB-42 and it's Seven Category Sentencing Structure

15   to stop the ISL from being repealed (which failed).  The September 1, 1976

16   letter is evidence that Briggs' goal was to prevent the repeal of the ISL

17   and it's uncertain and extended terms of punishment for crime for personal

18   and financial gain (See: Cal. Const. Art. IV § 15.)

19       6.  On July 1, 1977 the California Legislature passed AB-476, Stats,

20   1977 Ch. 165 § 15, operative July 1, 1977 as an unchangeable Urgency

21   statute rewriting the bulk of SB-42, but retaining its Seven category

22   sentencing structure.  In that Bill the Legislature declared the the

23   Purpose and Policy for imprisonment for all crimes committed on or after

24   that date was punishment for the crime itself (See: SB-42 at Appendixes #

25   3 & 4).  In short, the Legislative Declaration in Pen. Code § 1170(a)(1)

26   controls all other Pen. Code mandates including Pen. Code § 190. (See:

27   People v. Saffell, 25 Cal.3d 223, 236 [157 CR 897] (1979); Cf. 16 Am Jur

28                           [Pg.13 of 27]

2d § 23 (1998) [Public Policy of Determinate Sentencing must prevail]; Cf. Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 357 [51 S.Ct. 476] (1931); accord Thome v. Macken, 58 Cal.App.2d 76 [136 P.2d 116] (1943).)  Fourteen months later by way of Prop. 7 Senator Briggs did indirectly by Initiative what he could not do by Referendum because he did not have the votes to try to defeat the repeal of the ISL by way of Initiative; by adopting the term to life sentencing structure from the repealed ISL without reenacting it according to Art. IV § 9 (See: Gibbs v. City of Napa, Infra, at Pg.153).  However Plaintiffs posit that because the DSL was the only sentencing law that was enacted on Nov. 7, 1978, it was adopted into Prop. 7 as a matter of law along with it's Seven Category Sentencing Structure, and the mandatory P.C. § 2931 Credit earning law that was ratified, subsumed and incorporated into the Proposition Seven (hereinafter "Prop. 7") Initiative (See: Appendix #5 Prop.7; Cf. Appendix #3).  This codification process is confirmed by controlling California Supreme Court (CSC) authority followed for some 75 years:

> "It is a well established principle of statutory law that, where a statue adopts by specific reference the provisions of another statute, regulation, or ordinance such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary" (See: Palermo v. Stockton Theaters Inc., 32 Cal.2d 53, 58-59 [195 P.2d 1] (1948).

7.  As stated above, when the Prop. 7 Initiative was passed by the voters on November 7, 1978, they adopted, by necessity, the DSL and it's Seven Category Sentencing Structure because the ISL no longer existed due to repeal.  Therefore all prisoners were subject to DSL sentences, even those with ISL terms whose crime was committed before the repeal of the ISL prior to July 1, 1977 who were already sentenced and incarcerated.

In order to meet constitutional standards the DSL was retroactive so that ALL ISL sentences (pre and post Prop. 7) were, pursuant to Penal Code § 1170.2, to be provided DSL terms set forth in the Seven category sentencing structure terms (See: Appendix # 4 at AB-476 at Pg.17:26-36).

8.   On October 7, 1978, as stated in Prop.7's title, the Briggs Initiative was touted as the "murder penalty Initiative" and was, inter alia to increase the punishment prescribed by Pen. Code § 190 into 25 and 15 year terms were parole was prohibited except as reduced "subject to" contractually earned Penal Code § 2931 Credits (See: Appendix # 5 at Prop. 7's title; Cf. Cal. Const. Art § 9; Cf. Pen. Code § 190.4; accord Wolff v. McDonnell, 418 U.S. 538, 553-557 [94 S.Ct. 2963] (1974).)  All Federal and State controlling authority addressing Pen. Code § 2931 confirms that these credits were mandatory Alegory Contract Credits and not discretionary as they provided a protected Federal Liberty Intererst. Despite the fact Plaintiffs are seeking to have the sentencing laws enforced according to there terms and provisions as they existed on July 1, 1977, based on the Legislative Declarations in Penal Code § 1170(a)(1), it is important to note that Prop. 7's title shows that both the 15 and 25 year terms prohibited parole except subject to Good Time Credits (See: Wolff, Supra; Cf. Appendix # 5 at Legislative Declaration and title of Prop.7).  No where in Prop. 7's Title or it's text was ANY type of ministerial parole agency mentioned or re-vested with the Purpose, Policy, Ways, or Means (PPWM) nor the power to fix or extend terms or hold so called suitability hearings for crimes that called for punishments for less than SB-42 Category Five or less than Straight Life.  In Point of fact, on July 1, 1977 the parole agency's jurisdiction was confined to SB-42 category five crimes only.  (See: SB-42 and it's Seven Category

[Pg.15 of 26]

Sentencing structure in Appendix # 3 at Sentencing Classifications at Pg.2).

9.  Plaintiffs posit that on October 7, 1978 Prop.7 was and is "Void on its Face" by operation of Law for multiple reasons: A. Legislator Briggs violated the State Constitution (See: Cal. Const. Art IV § 8 by unlawfully using the Divine credibility of the California Legislature and his stature as a State Senator which was attached to the Briggs Initiative for the illegal purpose of implying trustworthiness when there was none. Briggs was shortly thereafter removed from office (forced to resign) for unlawful misconduct;  B. The Prop. 7 Initiative was illegal and Void as Briggs tried to undo and cancel a Legislative statute and its purpose and declaration  (See: SB-42 at Appendix #3 and AB-476 at Appendix #4) which is beyond the reach of an indirect and backhanded attempt to invoke a referendum process to repeal SB-42 & AB-476.  Watershed authority supported by 13 citations confirms this misconduct and illegal fact:

> "It is settled that an initiative ordinance may not be used to undo such an act which is beyond the reach of referendum proceedings. "A proposed initiative ordinance cannot be used as an indirect or backhanded technique to invoke the referendum process" where the latter process is unavailable." (See: Gibbs v. City of Napa, 59 Cal.App.3d 148, 153 [130 Cal.Rptr.382] (1976).

10.  On July 7, 2023 CSC justice Particia Guerrero abused her discretion when she ignored watershed legal facts showing a complete lack of jurisdiction to impose uncertain punishment for crime, then retaliated against Plaintiffs by transforming their original jurisdiction Complaint from a Declaratory and Injunctive relief pleading into a Writ of Mandate conspiring with her peers to conceal the truth and purposefully failed to address the merits in any manner.

11.  On November 1, 2023 CSC justice Patricia Guerrero violated the

1  Rules of Professional conduct and the Magana Carta Rule 45 when she
2  dismissed Plaintiffs case using the incorrect procedural device of a Writ
3  of Mandate without a hearing (filed as an original jurisdiction DIR) and
4  refused to address, in any manner, the Federal or State questions
5  presented in the DIR complaint.

V.  ARGUMENT AND GROUNDS FOR RELIEF

A.  DID THE CSC ABUSE IT'S DISCRETION WHEN IT FAILED TO
RULE ON THE MERITS AND TRANSFORMED THE DIR
PROCEDURAL DEVICE INTO A WRIT OF MANDATE

9  12.  The CSC sought to modify the DIR so that Defendants could avoid
10  the requirement that the complaint must be heard on the merits, using an
11  unlawful transformation of an Declaratory and Injunctive Relief action to
12  a Writ of Madate and provided a illegal vehicle for the court to treat the
13  pleading in a discriminatory manner and deny the DIR without a hearing.
14  This unlawful conduct violates both state and federal law:

"American jurisprudence has a long history of allowing the
Plaintiff to sculpt his lawsuit by selecting the initial forum as
well as the claims and defendants that he will join." (See: The
Fair Kohler Die & Specialty Co., 228 U.S. 22, 25 [33 S.Ct. 410]
(1913): Cf. Rule 60 Baylor L.Rev, 993, 999 (2008).)

18  13.  The Complaint confirms facts that show that the Indeterminate
19  Sentencing Law (ISL) was repealed along with the Purpose, Policy, Ways and
20  Means necessary for its existence such as the Parole Agency's power to fix
21  or extend terms of confinement.  The United State Supreme Court (USSC)
22  also eviscerated the Board's power to extend or fix terms of confinement
23  10 years ago and noted the parole agency's jurisdiction was confined to
24  SB-42 category 5 only (See: Armstrong v. Davis, 275 F.3d 849, 856 [2001
25  U.S. App. LEXIS 25298] (2001); Cf. Alleyne v. United States, 133 S.Ct.
26  2151, 2155-65 [186 L.Ed.2d 315] (2013).  Any ISL claim supported by off-
27  point or non-applicable authority that a 25 to life or a 15 to life

28

[Pg.17 of 27]

1   sentence (as enacted by Prop. 7) is not a DSL minimum term must be

2   supported by proof that the ISL was lawfully reenacted by the voters or

3   some other lawful means. This is a classic case of state officials

4   refusing to enforce state and federal law providing jurisdiction and

5   standing for this honorable court to decide the merits of both state and

6   federal constitutional claims:

7      "We have stated, for example, that a major purpose of the Civil
     Right Act was to "involve the federal judiciary" in the effort to

8      exert federal control over state officials who refused to enforce
     the law (Citation) (See: Maine et al, v. Thiboutot et vir., 448

9      U.S. 1, 20 [100 S.Ct. 2502] (1980).

10     14. Plaintiffs posit that it is fundamentally unfair and a violation

11   of their right to petition. It is unlawful to evade or refuse to enforce

12   the law and to use falsified procedures to deprive those discrimated

13   against, a constitutional right by a wrongdoer clothed in authority.

14      "Misuse of power, possessed by virtue of state law and made
     possible only because the wrongdoer is clothed with the authority

15      of state law, is action taken "under color of" state law. (See:
     United States v. Classic, 313 U.S. 299, 326 [61 S.Ct. 1031]

16      (1941).

17     15. Please take notice that Plaintiffs posit the facts presented

18   plead a credible case of fraud, conspiracy and fraudulent concealment by

19   multiple judicial and executive branch defendants. Moreover, as Rule 45

20   of the Magna Carta makes clear, no justice would ever modify a simple DIR

21   procedural device and then dismiss a complaint after illegal

22   transformation where the facts show that thousands of California prisoners

23   are illegally confined past their contractually earned Good-Time statutory

24   granted DSL release date. The intentional silence, misconduct and failure

25   to follow state law and constitutional mandate by a court officer

26   specifically directed at a clearly pled complaint could be construed as

27   criminal misconduct by a State officer of the Court. (See: California

28

Rules of Professional Conduct).  The plaintiffs are due trust and confidence from the CSC defendant including a hearing on the merits, but were denied that federal right:

> "It has also been recognized that silence can constitute fraudulent concealment "only where there [was] a affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence." (See: Neff v. UNUN Provident Corp., 2015 U.S. Dist. LEXIS 110026 at *17 [2015 WL 5036390] (2015).

16.  Certainly Plaintff's should have trust and confidence that the CSC would not intentionally be silent and ignore the fact that Plaintiff's are due a fair hearing on the merits based on a similar trust and confidence relationship with the States Highest Court.  But none was given by the CSC.  The CSC recognized the impact of the thousands of wrongly sentenced prisoners as early as November 7, 1978 and again in 1980 and now issued a dismissal to conceal and cover-up the misconduct of other judicial and executive branch [conspirators] (See: In re Jeanice D., Infra, at Pg.221.)

B.  ILLEGAL CONTRACTUALLY EARNED CREDIT TAKING WITHOUT A HEARING

17.  The CSC intended to remain  silent on the pleading fact that Defendants named in the DIR (See: Appendix #7) confiscated and took Plaintiff's Good Time Credits without a hearing (See: Appendix 7 at Pg.12 of 23).  Both State and Federal law continue to be violated when wrongly confiscating and taking federal Liberty Interest Good Time credits that are a contracted right to reduce ones sentence and continues to be protected by State and Federal constitutional authority ( See: Appendix #7 Ibid.)  Ninth Circuit authority additionally allows standing when, as here, early release is not a factor nor was it pled in any manner:

"In contrast, if a favorable judgment for the petitioner would not "necessarily lead to his immediate or earlier release from confinement, "he may assert his claim only under 42 U.S.C. § 1983. <u>Nettles v. Grounds</u>, 830 F.3d 922, 935 (9th Cir. 2016). (See: <u>Gonzalez v. Borla</u>, 2023 U.S. Dist. LEXIS 214119 at ☆2 (2023).

18. Plaintiff's are, Inter Alia, challenging the procedure for taking Good-Time credits without a hearing to pursue damages <u>only</u>. The Complaint does not seek Restoration of Credits, nor does it challenge Appellants conviction or sentence. And only seeks damages allowed under § 1983 and the supporting authority therein. The evidence regarding improper sentencing is only advanced as evidence of misconduct proving that the Defendants did not follow proper procedure when the Good-Time credits were wrongly withheld without a mandatory hearing. Although Plaintiffs are not seeking earlier release the CSC knows that even if the DIR Complaint was Granted Plaintiffs entitlement to be released must be in accordance with the purpose & policy for the law as declared by the Legislative policy in effect on July 1, 1977 after the ISL's repeal effective July 1, 1977 (See: SB-42 [1976] and AB-476 [1977], Stats 1976 Ch.139 and Stats 1977 Ch. 165):

"Thus, a claim should proceed in habeas only if the petitioner's success on that claim would 'necessarily demonstrate the invalidity of confinement or duration.' (citation). 'A civil rights action, in contrast, is the proper method of challenging conditions of ... confinement' (citations). '[c]onstitutional claims that merely challenge the conditions of a prisoners confinement, whether the inmate seeks monetary or injunctive relief, fall outside 'of the habeas core and must be raised as as civil rights claim. (citations) (instructing civil rights action'). (See: <u>William Young v. Jacquez</u>, 2023 U.S. Dist. LEXIS 200570 at ☆2) (2023).

C. PLAINTIFF'S WERE SPECIFICALLY GRANTED GOOD-TIME CREDITS UNDER THE DETERMINATE SENTENCING LAW. THE CSC WAS SPECIFICALLY SILENT ON HOW OR WHEN THE INDETERMINATE SENTENCING LAW (ISL) WAS REENACTED FOR CATEGORY 4 OR LESS CRIMES

19. The CSC Defendant appears to be involved in a conspiracy with mass incarceration and will not support that 15 year sentences granted by

1  Prop. 7 are Determinate Sentences and are required to receive Good-Time

2  Credits (See: Appendix # 5 Prop. 7's Title) which specifically provides

3  for Contractually Earned Credits to reduce 15 and 25 year Sentences.  The

4  ISL was repealed and never reenacted for category 4 and below crimes,

5  please review the Enrolled Bill Report (See: Appendix #6) which confirms

6  and explains at Page 4, that:

> "SB-42 generally replaces the indeterminate sentence with a
> determinate sentence imposed by the trial court at the time of
> sentencing.  The exceptions [because they are already are
> determinate sentences and have been so declared for over 60 years]
> are capital crimes and those offenses having Straight Life
> Sentences, with or without possible parole."  (See: Appendix # 6
> at Pg.4.)

11    20.  Additionally supportive of the lack of evidence that the ISL was

12  ever revived is appellate authority from the Fifth Appellate District,

13  which confirms:

> "Effective July 1, 1977, California repealed its indeterminate
> sentencing law.  On that date, the Uniform Determinate Sentencing
> Act of 1976, as amended by statutes in 1977, became operative.
> The DSA [aka DSL] returns the sentencing power to the courts, but
> requires sentencing judges to impose the 'middle' of three
> statutorily determined lengths of incarceration for a crime,
> unless there are 'circumstances in aggravation or mitigation,' in
> which case the longer or shorter period will be imposed.
> (citation) (See: People v. West, 70 Cal.App.248, 256 [1999
> Cal.App. LEXIS 158] (1999); Cf. In re Carl Lee Gray, 85 Cal.App.3d
> 255, 259 [149 Cal.Rptr.416] (1978).

20    21.  Straight Life Sentences are Determinate terms under the DSL as

21  they were under the ISL.  They are provided for the crime of Kidnapping

22  and the most serious of murder cases and are distinguished from 15 and 25

23  Determinate sentences enacted in Prop. 7. (See: Tome v. Gastelo, 2019 U.S.

24  Dist. LEXIS 29655 at *31 (2019); accord In re Jeanice D., 28 Cal.3d 210,

25  222-228 [168 Cal.Rptr. 455] (1982). During the In re Jeanice D., Supra,

26  and In re Stanworth, Infra., argument the Attorney General posited that a

27  25 to Life Sentence was a Determinate Life Sentence with a Minimum parole

28  date under the DSL.  California Supreme Court Justice J. Richardson argued

1  that the Indeterminate Sentencing Law was not revived or reenacted by the
2  passage of Prop. 7 and you can't have a Indeterminate sentence before or
3  after repeal of the ISL (See: In re Jeanice D., Supra, 222-228; Cf. People
4  v. King, 5 Cal.4th 59, 65-67 [19 CR.2d 233] (1993).)  Any speculative or
5  ludicrous claim that a 15 or 25 year term established by Prop. 7 are
6  somehow an Indeterminate sentence must confirm and specifically explain
7  how Good-Time Credits provided by Prop. 7 to shorten the prisoners
8  sentence release date can be possible after the Parole Agency's power to
9  fix or extend terms for category 4 and below crimes was taken and
10  specifically removed. (See: Appendix #8).

11      22.  Please take notice that Plaintiffs posit that when the CSC
12  Defendant realized the compelling authorities that Appellants were
13  documenting and supporting with the Rule of Law (both statutory, common
14  law and constitutional law) that would affect every prisoner who was
15  impacted by the repeal of the ISL and then continued the conspiracy to
16  fraudulently abuse and continue to use those taxpayers funds for an
17  unlawful purpose, the CSC with foreknowledge under color of state law and
18  with bias intent refused to provide a hearing on the merits in violation
19  of the state constitution and Federal Law making this action cognizable
20  under § 1983.  The CSC is required to follow State Constitutional law and
21  USSC authority (See: Maine v. Thiboutot, Supra, at 20-21,) discriminating
22  against part of the DSL class without providing a Due Process hearing on
23  the merits in violation of the 14th Amendment as shown by statute, is
24  strong evidence which confirms that after its repeal, the ISL was never
25  lawfully reenacted.  Once shown, pled and confirmed the CSC Defendant
26  intended to evade those compelling facts.  The CSC Defendant failed to
27  follow the Rule of Law, which continues to violate the state and federal

28

constitutions and show an ongoing attempt to avoid addressing the repeal
of the ISL, including the lack of the Purpose, Policy, Ways and Means
(PPWM), allowing the Parole Agency to even operate in any manner against
the class for which the DSL was created (See SB-42 & AB-476 and Parole
Agency repealing authority at Appendix # 4, 5 & 8).

23.  Please take notice that the CSC failure to provide a merits
decision in violation of Cal. Const. Art. VI § 14 of the State
Constitution avoids and skips the unrefutable fact that NO COURT HAS EVER
ADJUDICATED ON THE MERITS the facts that the ISL was repealed and NEVER
REENACTED" for the crimes listed in SB-42 Category one through seven, and
ignores that the DSL was to be retroactively applied to those whose ISL
crime that was committed prior to the ISL's repeal (See: Pen. Code §
1170.2).  There is NOTHING in Prop. 7 nor Pen. Code § 190, as modified in
Prop. 7 that suggests or implies that 2nd degree P.C. § 187 (a SB-42
Category 4 crime) was or could be transformed into an indeterminate
sentence after the ISL was repealed. (See: Association for Retarded
Citizens v. Dept. of Developmental Servaices, 38 Cal.3d 384, 390-394 [211
CR 758] (1985).  Furthermore, Pen. Code § 2931 credits to reduce 15 and 25
year terms were specifically provided in Prop. 7's title which strongly
confirms that the Parole Agency had no jurisdiction or authority to fix or
extend any terms of confinement.  The Ninth Circuit also confirms that the
parole agency's jurisdiction (if it had any) is limited to life crimes,
not 2nd degree P.C. § 187 category 4 crimes:

> "It conducts parole hearings for prisoners sentenced to a term of
> life with the possibility of parole [a Determinate Sentence] who
> are the only adult prisoners subject to such hearings under
> California law." (See: Armstrong v Davis, 275 F.3d 849, 856 [2001
> U.S. App. LEXIS 25298] (2001) (Emphasis added).

[Pg.23 of 27]

24. The fact that the ISL was never partially revived baits the question by what authority of law Senator Briggs could even use to execute the People's Initiative process when he could not use the legislative referendum process, much less transform a Category Four SB-42 crime into an Indeterminate sentence without the subject being presented to the voters (See: Cal. Const. Art. II § 8 & Art. IV § 9; Cf. Fairbank v. United States, 181 U.S. 283, 294 [21 S.Ct. 648] (1901).) The California Supreme Court court itself via the distinguished Justice J. Richardson confirmed that the ISL was never reenacted or revived:

> "There is nothing whatever in the text of the measure [Prop. 7] itself nor its accompanying analysis which suggests that the ISL would be partially revived, or that new indeterminate life sentences therefore would be moderated.  To the contrary, voters were told other wise." (See: In re Jeanice D., 28 Cal.3d 210, 221 [169 Cal.Rptr. 455] (1980), (Dissent on a different juvenile matter) [Emphasis added].

D.   COURT IS OBLIGATED TO PROVIDE A HEARING ON A SERIOUS
STRUCTURAL DEFECT IN SENTENCING OF THOUSANDS OF
CALIFORNIA PRISONERS DOCUMENTING A SERIOUS
MISCARRIAGE OF JUSTICE

25. The CSC Defendant knew and understood the facial fact that NO COURT HAS EVER ADJUDICATED or identified how, in conflict with the Legislative Declaration in Pen. Code § 1170(a)(1), and Prop. 7's Title Page enactments, the ISL could be transformed back into operation when the Legislature specifically repealed the "PURPOSE, POLICY, WAYS, and MEANS (PPWM) necessary for uncertain punishments to exist.  This Complaint shows that Plaintiff's could not be constitutionally sentenced under the repealed ISL.  The CSC Defendants cannot state or imply how the ISL was reeacted after repeal.  No court should just pronounce a law back into existence after it was previously repealed.  The CSC Defendant cannot avoid or explain the fact that the ISL was repealed and NEVER reenacted for category 4 and below crimes.  It is an undisputed fact that the ISL

1  was repealed for all crimes with the term setting power returned back to

2  the courts, See: Pen. Code §§ 12 & 13.

3      26.  Regardless of the overwhelming evidence of a "Miscarriage of

4  Justice" by the CSC Defendant by not allowing Plaintiff's facts to be

5  adjudicated on the merits, the conduct documented on this record shows a

6  blatant 14th Amendment violation of Plaintiff's Federal and State

7  constitutional Rights.  For Example, by what law can a grater punishment

8  be imposed for the lesser crime? (See: In re Stanworth, 33 Cal.3d 176,

9  181-183 [183 CR 783] (1982),) which demonstrates an outrageous

10  disproportinate sentence suffered by those within the class discriminated

11  against (See: Appendix # 5) documenting that Prop. 7 at Pen. Code § 190.4

12  where the Court fixes the DSL term at 25 years, flat time when a special

13  circumstance allegation is not proven. [Emphasis added].  The point is,

14  why should the California Taxpayers have to fund the costs of keeping a

15  person imprisoned beyond his contractually earned Pen. Code § 2931 release

16  date the same as all other prisoners within the purpose of the DSL?  This

17  abuse continues to cause gross disproportionality and 14th Amendment

18  violations.  These constitutional depravations continue to be based on

19  false facts that were reactivated from thin air that caused the excessive

20  incarceration beyond the term fixed by an inmates earned credits based on

21  facts that have never been found true by a jury, which is an additional

22  violation of USSC controlling authority (See: Alleyne v. United States,

23  Supra, at 2155-65 (2013).

24      27.  The Prop. 7 sentencing errors pled throughout this case amount to

25  a ongoing structural sentencing defect documenting a complete lack of

26  jurisdiction.  This is true, especially when Plaintiff's are NOT seeking

27  earlier release, but merely advance these sentencing facts to prove

28  [Pg.25 of 27]

numerous points of fact and law based on the evidence that confirm errors and misconduct supporting that Plaintiff's sentences are not Indeterminate sentences, but Determinate Sentences in which Plaintiff's Good-Time credits are being unlawfully taken without a hearing in violation of the U.S. Constitution under the 14th Amendment (Due Process and Equal Protection) allowing a Section 42 U.S.C. 1983 Complaint adjudicating damages for the unlawful taking of credits without a hearing.  All the above sentencing and administration errors are provided for the sole purpose of establishing a evidentiary basis and support for the conditions of confinement claims, specifically the illegal Good Time credit adjudication, and that is there only purpose.

## VI.  PRAYER FOR RELIEF AND CONCLUSION

28. Because the state's highest court has failed to follow the Rule of Law mandated by both State and Federal Constitutions (See: Appendix # 5 at Prop. 7's Title which confirms that "25 and 15 year" [Determinate] terms are subject to good time Credit,) this court should order the AG to specifically Respond to the questions presented and appoint a Federal Public Defender to reply and decide the case on the merits.

29.  Pursuant to 28 U.S.C. §§ 2201 & 2202 and because Plaintiffs have substantially demonstrated Defendants Bad-Faith enforcement of the State of California's sentencing and credit laws, Plaintiffs request a declaratory judgment confirming that the continuation of having their contractually earned credits taken is a violation of their 14th Amendment rights.  The facts demonstrated (especially the silence and omissions) that this litigation is NOT barred by 11th Amendment immunity (See: Garcia v. United States, 528 F.Supp.814, 817 [82 U.S. Dist. LEXIS 12474 (1982); Cf. Steffell v. Thompson, 415 U.S. 452, 454 [94 S.Ct. 1209] (1974).

[Pg.26 of 27]

Plaintiffs irreparable injury and request Declaratory relief and a Permanent Injunction against further suspension and/or illegal confiscation of contractual Federal Liberty Interest credits. Furthermore, due to the sacrosanct will of the Prop. 7 voters the illegally repudiated credit statute (Pen. Code § 2931) musll be ordered by this court to be legally allocated as they are a critical protected contractual Liberty Interest right, which the State cannot take or confiscate without violating the 14 Amendment (See: Floyd v. Banding, 54 Cal.41, 43 (1879; Cf. Deputy Sheriffs' Assn. of San Diego County v. County of San Diego, 223 Cal.App.4th 573, 578 [182 Cal.Rptr.3d 759] (2015).

30.  What chance does a reasonable person have to protect their federally guaranteed rights after those Constitutional Rights were denied because, like the case at Bar, the State's highest court refuses to follow it's own decisions, obey the mandatory provision set forth by the Legislative Policy, and the State's Constitution, or acknowledge this Court's precedent and USSC controlling Rule of Law?

VII.  VERIFICATION - 28 U.S.C. § 1746

31.  As the Plaintiffs in the above entitled action, we both declare under penalty of perjury under the laws of the State California and the Laws of the United States of America, that the foregoing is true and correct.  EXECUTED on _Jan_ (Month) _14_ (Day), 2024.

Respectfully Submitted

_[signature]_
BRUCE KOKLICH
Plaintiff in Pro Se'

_[signature]_
LAWRENCE REMSEN
Plaintiff in Pro Se'

[Pg.27 of 27]

TABLE OF APPENDICES

Appendix                                                                          Pages
   No.                                                                             No.

1.   March 26, 1975 California Attorney General Two page letter              2
     confirming intent of the AG to Repeal the Indeterminate
     Sentencing Law (ISL)

2.   September 1, 1976 California Legislator John v. Briggs                  3
     unlawfully influencing Governor Brown to veto the repeal
     of the ISL.

3.   July 1, 1977, Senate Bill - 42 (SB-42) and it's Seven                  10
     Category Sentencing Structure that removed the ISL statutes
     thereby permanently removing (until lawfully reenacted)
     the Parole Agencies "Purpose, Policy, Ways and Means for the
     parole agency to exist and function in any manner.

4.   Assembly Bill 476 (AB-476) confirms that all sentences                 5
     even Indeterminate sentences under P.C. § 1168 must be
     fixed as DSL determinate terms (See: Pg.17:21-36) and
     P.C. § 1170(a)(1) Legislative Declaration.

5.   October 7, 1978 Proposition Seven (Prop.7) Initiative                  10
     confirming the Sacrosanct will of the People to provide
     for Determinate Sentences offering parole release "Subject
     to Good-Time Credits." The title of Prop.7 and it's
     other provisions confirm it's to codify the DSL.

6.   September 15, Enrolled Bill Report (See: Page 4) which                 12
     confirms that Capital Crimes and Straight Life were and
     continue to be Determinate Sentences.

7.   June 14, 2023, Complaint for Declaratory and Injunctive                21
     Relief (DIR) wrongly transformed into a Writ of Mandate
     by Defendant Patrica Guerrero.

8.   June 19, 1977 Repeal of the Indeterminate Sentencing Law               2
     including Repeal Statues necessary for evidentiary
     procedure (See: Stats.1977 c. 166, § 43; Stats.1976,
     c. 1139, § 279).

[ i ]

APPENDIX - 1

EVELLE J. YOUNGER
ATTORNEY GENERAL

STATE OF CALIFORNIA



MAR 27 1975

OFFICE OF THE ATTORNEY GENERAL

Department of Justice

555 CAPITOL MALL, SUITE 550
SACRAMENTO   95814

March 26, 1975

The Honorable John A. Nejedly
Senator, State of California
State Capitol
Sacramento, California  95814

Dear Senator Nejedly:

This is to express our support for Senate Bill 42, which you
recently introduced.  Senate Bill 42 repeals the indeterminate
sentencing law in California, and substitutes for it a system
of fixed prison terms.

We support Senate Bill 42 because we believe that the indeter-
minate sentence concept has failed to achieve its intended
result.  The fixed term system proposed by Senate Bill 42
is consistent with the essentially punitive nature of our
prison system.  At the same time it is not so inflexible that
it discourages prisoners from seeking rehabilitative assistance
while serving their terms.

Very truly yours,

EVELLE J. YOUNGER
Attorney General

MICHAEL FRANCHETTI
Deputy Attorney General

MF:bls

THE SACRAMENTO BEE    Friday, November 21, 1975

# Younger Wants End For Paroles

SAN FRANCISCO (AP) — California Atty. Gen. Evelle J. Younger called Thursday for abolition of the parole system for prisoners and suggested some violent criminals should be "written off as hopeless risks" who never can be released.

Younger made his proposals in announcing plans to offer sweeping legislation early next year to do away with the California Adult Authority, the state agency that grants paroles and decides the length of imprisonment for persons given indeterminate sentences.

Younger told a news conference he also would ask the legislature to determine "a level of violent conduct from which there is no release."

"Parole as we know it should be abandoned," Younger said.

He said the system of openended sentences, which California pioneered, "has failed." At present the law provides that judges can set sentences such as five years to life, and the Adult Authority decides how long a convict actually serves.

"Fixed sentence would clearly define society's concerns and priorities. No longer would a person who has done wrong be punished for it at some uncertain later date," Younger said. "He would know clearly the punishment he will receive for a crime when the crime is committed."

APPENDIX - 2

# Assembly
# California Legislature

### JOHN V. BRIGGS
ASSEMBLYMAN, SIXTY-NINTH DISTRICT

STATE CAPITOL
SACRAMENTO, CALIFORNIA 95814
(916) 445-7448

... ... ... Boulevard
... ... ... Building B, ... ...
FULLERTON, CALIFORNIA 92635
(714) 879-2343

RONALD L. FOX
ADMINISTRATIVE ASSISTANT

MEMBER
ELECTIONS AND REAPPORTIONMENT
INTERGOVERNMENTAL RELATIONS
LABOR RELATIONS
PUBLIC EMPLOYEES AND
RETIREMENT

September 1, 1976

The Honorable Jerry Brown, Jr.
Governor
State of California
State Capitol
Sacramento, California

Dear Governor:

I am writing this letter with the hope that you will veto Senate Bill 42, which you and I discussed after the Session ended.

In my opinion, this legislation will cause the most violent crime wave California has ever experienced. As an architect of the bill, you are the most familiar with it. Inasmuch as I was not able to convince you after the heat of the battle, I hope a good night's rest has allowed the fog to clear your mind so that you may understand that while your advisors are telling you that you will have repealed indeterminate sentencing, actually what you truthfully will be doing is repealing the Habitual Criminal Act.

Simply stated, Governor, there are 15,000 convicts currently on parole in California who, under the terms of your bill, will all be released (with the exception of a very, very few) within one year. Over 55% of the crimes occur after this one-year period, and having them under parole supervision is the most effective way of returning them to prison, as law enforcement knows their habits, their hang-outs, and therefore, where to apprehend them.

In addition, there are another 16,000 men in prison, and it is safe to say that hundreds, if not thousands, of them are going to be spilled onto the streets to recommit the same crimes upon the populace that landed them in prison in the first place.

The Honorable Jerry Brown, Jr.
September 1, 1976
Page Two

    I feel you are going to have to answer to the people of the
State of California when they learn that a person who commits a
lewd act upon a child's body could be sentenced to prison for a
maximum of five years under this bill instead of a possible life
term as under existing law.  This is only one of the many reduc-
tions in prison sentences that the safety-conscious citizens of
California are going to be made painfully aware of as we pass
through the next few years, suffering under this "grand experiment"
of well-meaning people who are tinkering with a 60-year-old system
that may not have been perfect, but which did accomplish, for the
most part, its major aim ..... that once a person was sent to
prison, there was a way to keep him there, even for life itself.

    All of this is in your hands, and when you take up that pen,
I sincerely hope you will veto Senate Bill 42.

Very truly yours,

JOHN V. BRIGGS
Assemblyman

JVB:npm

THE SACRAMENTO BEE. Wednesday, March 26, 1975

*Younger's View*

# Specific Jail Terms

SAN FRANCISCO (AP) — California Atty. Gen. Evelle J. Younger said the present indeterminate sentence system isn't helping prisoners and said it should be abolished and replaced.

"California was among the first, if not the first to develop the concept of indeterminate sentences," Younger said, "but we are forced to reluctantly concede that it hasn't worked."

He said the system has not accomplished its intended purpose of reforming or rehabilitating prisoners because 40 per cent of all inmates return to prison within six years after release.

Younger said his office supports a bill by Sen. John Nejedly, R-Walnut Creek, which would alter the indeterminate sentence system.

Younger said that under the Nejedly bill, the Legislature would get a specific — not an indeterminate — sentence for a crime, based upon its seriousness.

Younger said that the sentence also could be changed while the prisoner is serving time, with credit for good conduct.

"Under this proposed system when a person left the courtroom, he would know how much time he was going to spend, and he could shorten this by his good conduct," Younger said.

WAYS & MEANS STAFF ANALYSIS   LAST AMENDED 8/13   AUTHOR   Nejedly   NO. SB 42

CONSULTANT   Williams   DUE   8/17   DEPT. OF FINANCE _____

FISCAL
IMPACT   APPROPRIATION } STATE COST _____   REVENUE LOSS _____
                          SB 90 COST _____

SUBJECT:
Determinate Sentencing.

COMMENT:
Existing law provides for an indeterminate sentence following the
conviction of a person for a felony.  In theory, the indeterminate
sentence authorizes the trial judge to commit a convicted felon to
state prison but the decision as to when such felon shall be released
is the responsibility of the Adult Authority or the Women's Board of
Terms and Paroles.

The repeal of the indeterminate sentence law is considered by many to be
the number one priority for present-day penal reform because under such
system prisoners spend most of their time not knowing when they are to
be released or what they must actually do to speed up their release date

This bill repeals the existing indeterminate sentence statute except
those that are for life imprisonment, life without possibility of
parole, or death and establishes a seven category sentence structure
from which the judge shall sentence based upon which category the
particular crime committed falls into.  Four of the seven categories
have three choices which the judge may make in sentencing.

This bill also provides for credits from the sentence for good behavior
as specified and for enhancements to the sentence depending upon the
actual circumstances of the crime as committed by the convicted person.

This bill also abolishes the aforementioned existing parole boards and
establishes a Community Release Board with specified duties.

This bill also specifies new duties for the Judicial Council whereby
they are to adopt sentencing rules for the consideration of trial courts
to collect, analyze and distribute sentencing information to trial judges
and to conduct sentencing institutes.

FISCAL IMPACT:
The Department of Corrections has not been able to accurately calculate
the fiscal impact of this legislation, however, each of their estimates
has indicated that a net savings will accrue as a result of this bill.

The Judicial Council indicates that their costs would be increased by
$512,027 and the annual increase to the Superior Courts would be
$1,109,912.

(SEE ATTACHED)

This bill should result in a total net savings to the state.

SB 42 - Page 2

ANALYSIS:
This bill amends all relevant code sections where penalties and
sentences apply in order to conform such with the determinate sentence
law as provided for in this legislation.

## Legislative Findings and Declarations

This bill finds and declares that the purpose of imprisonment for crime
is punishment.  This purpose is best served by terms proportionate to
the seriousness of the offense with provision for uniformity in the
sentences of offenders committing the same offense under similar
circumstances.

## Trial Court Sentencing

All crimes that carry a prison sentence are placed in seven categories
with four categories containing three classifications.  The trial court
shall sentence the defendant to one of the terms of imprisonment
specified unless such convicted person is given any other disposition
provided by law, including a fine, jail, probation or the suspension of
imposition or execution of sentence.  In sentencing the convicted person
the court shall take into consideration the sentencing rules of the
Judicial Council.

## Sentencing Classifications -- Section 1170 a(2) b

(1)  16 months, 2, 3 years - this classification is to cover
the least serious felonies.  It contains all felonies that currently
carry a maximum of two years and a maximum of three years, all
felonies that carry a maximum of five years (with one exception,
Penal Code Section 243, battery with serious bodily injury), all
wobblers (with three exceptions:  P.C. 243, battery with bodily
injury; P.C. 245a, assault with a deadly weapon or force likely
to commit great bodily injury; P.C. 4532a, escape with force),
some crimes with 10 year maxima, some crimes with 14 year maxima,
and some others that have higher maxima such as statutory rape
and offenses involving prisoners.  This category includes most
non-violent property offenses (grand theft, forgery, receiving
stolen property, joy-riding, credit card offenses, second degree
burglary), possession of all controlled substances (that are
currently felonies), possession for sale of dangerous drugs and
marijuana, and some felonious assaults (simple assault on a
peace officer, assault with intent to commit a felony, shooting
into a dwelling).

-more-

SB 42 - Page 3

(2)  2, 3, 4 years - this classification is to cover more serious offenses.  It contains only one felony that currently has a maximum of less than seven years (P.C. 243, battery with injury).  Most other crimes with 10 and 14 year maxima are in this classification. It contains all wobblers that were not in the previous classification.  It contains some crimes that currently carry a maximum of life imprisonment (sale of marijuana, first degree burglary, assault with a deadly weapon).  Some of the felonies in this classification are:  mayhem, assault with intent to commit murder, assault with a deadly weapon, voluntary manslaughter, involuntary manslaughter, bribery, perjury, possession for sale of opiates, sale of dangerous drugs and marijuana, second degree robbery, first degree burglary, arson, forceable oral copulation, forceable sodomy, oral copulation on a child under 14, sodomy on a child under 14, pimping, pandering, and assaults with intent to rape or rob.

(3)  3, 4, 5 years - this classification covers the second most serious felonies that are to be determinately sentenced. All crimes in this group currently carry maxima of life imprisonment or a very high term.  The minima currently range from six months to ten years for these crimes.  Included in this classification are the following crimes:  sale of opiates, kidnap, unarmed robbery of a taxi or bus driver, assault with a deadly weapon on a peace officer, forceable rape, gang sodomy and oral copulation, child molestation, and burglary with explosives.

(4)  5, 6, 7 years - this classification covers the most serious crimes that are to be punished with something less than life imprisonment or death.  SB 42 places the following five crimes into this category:  second degree murder; attempted murder; explosives with bodily injury; gang rape, and conspiracy to commit a crime on certain elected officials.  All these crimes currently carry maxima of from 20 years to life imprisonment and minima ranging from five to fifteen years.

(5)  Life imprisonment - this covers murder in the first degree, explosives with great bodily injury, kidnap for ransom, trainwrecking.

(6)  Life with no parole - included in this classification is trainwrecking with injury, and kidnap for ransom with injury.

SB 42 - Page 4

(7) <u>Death</u> - this covers special circumstance murders and kidnap with death.

Attempts are to be punished as 1/2 of the term selected, plus enhancements, consecutive sentences, etc. Attempt of a crime punishable by life imprisonment is to be punished 5, 6, 7 years. Attempt of the lowest class felony can be punished with state prison (current law only allows one year in the county jail for such attempts).

<u>Enhancement and Mitigation of Sentence -- Section 1170 (b)</u>

When a judgement of imprisonment is entered, the court shall order the <u>middle of three possible terms</u> of imprisonment, <u>unless</u> there are <u>circumstances in aggravation or mitigation</u> of the crime. Such circumstances shall only be considered if set for in a motion made prior to or at the time set for sentencing.

The upper term or lower term may be imposed only when the circumstances alleged to be in aggravation or mitigation respectively of the crime are found to be true by the trial judge upon the evidence introduced at the hearing on the motion, and are set forth as findings of fact on the record at the time of sentencing.

The following is a list of such circumstances that can enhance a sentence:

(A)  Where the new offense is one of the following "violent felonies": (Section 667.5 a,c)

   (1) Murder or voluntary manslaughter
   (2) Mayhem
   (3) Forceable rape as defined
   (4) Sodomy by force, violence, duress, menace, or threat of great bodily harm
   (5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm
   (6) Kidnapping as defined
   (7) Lewd acts on a child under 14 as defined
   (8) Any other felony in which the defendant inflicts great bodily injury on any person other than accomplices has been alleged and proved.

The trial court shall impose a three year term for each <u>prior separate prison term</u> served by the defendant for any of the above felonies. (Except in any case in which the defendant has remained free of prison custody and free of felony conviction for 10 years immediately preceeding the filing of an accusatory pleading that results in
conviction.)

(B) Any person who attempts or commits any felony while <u>personally armed</u> with any specified deadly weapon (one year enhancement) (Section 12022).

-more-

SB 42 - Page 5

(C)  Any person who uses a firearm in the commission or attempted commission of a felony.  (Two year enhancement) (Section 12022.5).

(D)  Where the elements of any felony, excepting robbery, arson, and burglary as specified, involve taking of funds or property from or property damage in excess of $100,000 but less than $500,000. (One-half the base year enhancement) (Section 12022.6a).

    (1)  If the amount is equal to or greater than $500,000, the enhancement shall be equivalent to the base term selected by the judge.  (Section 12022.6b).

(E)  In any case, except a homicide offense, in which defendant is convicted of a felony in which great bodily injury is not an element of the crime but in the course of the commission of said crime and with the intent to inflict such injury the defendant inflicts such injury upon any person other than accomplices.  (3 year enhancement) (Section 12022.7).

(F)  Consecutive sentences may be imposed that would add one-third of the middle base term to the sentence, for each consecutive sentence. Such consecutive sentence must be free of enhancements.

Judicial Council

(1)  Provides that the Judicial Council shall adopt rules to promote uniformity in sentencing by providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to:

    (a) Grant probation or order state imprisonment.
    (b) Impose the lower or upper prison term.
    (c) Impose concurrent or consecutive sentences.
    (d) Consider an additional sentence for prior prison terms.
    (e) Impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage, or the infliction of great bodily injury.

(2)  The Judicial Council shall:

    (a) Collect, analyze, and quarterly distribute and publish in the official reporter relevant information to trial judges relating to sentencing throughout the state and penalties provided for in other jurisdictions.
    (b) Conduct annual sentencing institutes for trial court judges pursuant to the Government Code, toward the end of assisting the judge in the imposition of appropriate sentences.
    (c) The Judicial Council shall adopt rules to promote uniformity in parole release decisions by providing term-setting criteria for the consideration of the Community Release Board.

    (d) The Judicial Council shall meet annually, in public hearing, providing prior public notice, for the purposes of reviewing statutory sentences and the operation of existing criminal sentencing statutes and shall thereafter report to the appropriate policy committees of the Legislature regarding all proposed legislation regarding this subject

-more-

SB 42 - Page 6

matter and make recommendations.  Such review and recommendations shall take into consideration:

I.  The nature of the offense with the degree of danger the offense presents to society.
II.  The penalty of the offense as compared to penalties for offenses that are in their nature more serious.
III.  The penalty of the offense as compared to penalties for the same offense in other jurisdictions.
IV.  The penalty of the offense as compared to recommendations for sentencing suggested by national commissions and other learned bodies.

Community Release Board

This bill abolishes the Adult Authority and the Women's Board of Terms and Parole and establishes the Community Release Board.

The board shall be composed of nine members, each of whom shall be appointed by the Governor with the advice and consent of the Senate, for a term of four years.  Two of the regional appointees shall be persons who were members of the Adult Authority immediately prior to the effective date of this legislation, and two shall be persons who were members of the Women's Board of Terms and Parole immediately prior to the effective date of this legislation.

The board shall reflect as nearly as possible a cross-section of the racial, sexual, economic, and geographic features of the population of the state.  (Section 5075).

The board shall meet at each of the state prisons at such times as may be necessary for a full and complete study of the cases of all prisoners whose applications for parole come before it.  (Section 5076.1).

The board may meet and transact business in panels.  Each board panel shall consist of at least three members.  (Section 5076.1).

The board shall review all prisoners' requests for reconsideration of denial of good time credit, and setting of parole length or conditions, and shall have the authority to modify the previously made decisions of the Department of Corrections as to these matters.  The revocation of parole shall be determined by the Community Release Board.

Credits for Good Behavior and Participation

This bill allows for credits to be deducted from the term of imprisonment. Three months a year are to be deducted for the forebearance of specified acts (such as escape, assaultive behavior, possession of drugs, possession of a weapon, etc.)  These acts are placed into three

-more-

SB 42 - Page 7

categories:  acts which will allow the loss of 15 days; acts which will allow the loss of 30 days; acts which will allow the loss of 45 days. The bill provides for some procedural safeguards for the loss of good time.

One month a year is to be deducted for participation in work, educational, vocational, therapeutic, or other prison programs and activities.

All prisoners will serve eight months of each one year of the term unless good time or participation time credits are lost.  If the inmate is prosecuted by the local district attorney for an act for which good time could be lost, then good time can only be lost by a conviction. An acquittal is binding as a factual determination.

Prisoners sentenced prior to the effective date of SB 42 will receive credits on their terms only after the effective date of the Act.

Parole

Prescribes rules and procedures for parole of persons sentenced under this bill, including an automatic parole of no longer than one year, or three years for "lifers", at the expiration of the term, unless CRB for good cause waives parole and discharges the inmate.

The bill prescribes rules and procedures for parole of persons receiving an indeterminate (life) sentence, including the following:

(1) Meetings between the inmate and CRB, at which a majority of a three member panel of CRB will decide whether to set or decline to set a release date.  The first is within one year of his incarceration.  If no release date is set prior to his minimum eligible parole release date, or if the date is more than three years after the minimum, he can have a re-hearing with counsel.

(2) The right of the inmate to the undivided attention of panel members, to a transcript and to receive notice of the panel's decision, with an explanation whenever a release date has been denied, postponed, or rescinded.

Limits parole revocation in the following respects:

(1) Reconfinement shall not exceed six months.

(2) In no event shall reconfinement and re-parole extend beyond the original one-year, or three-year maximum.

Retroactivity

For those prisoners already in prison but who would have been determinately sentenced under SB 42 (had it been law at the time of the sentence), the following guidelines are set up for the Community Release Board:

-more-

SB 42 - Page 8

(a) Figure the middle term of the crime for which the prisoner has been convicted and aggregate it by any additional terms which were imposed by the trial court.

(b) The CRB should use this figure as the prisoner's term unless he already has a parole date from the Adult  Authority (or Women's Board) that will let the prisoner out earlier; then the earlier date shall be selected.  There shall be no good time credit for time served prior to the effective date of the Act.

(c) However, if the CRB feels that the prisoner merits more time because of the number of convictions or priors, or due to the fact that a deadly weapon was involved or that an attempt to inflict great bodily injury was involved, the Board may set a later date for release (upon a hearing with counsel for the inmate).

In fixing a term in these cases, the board "shall be guided by the term which reasonably could be imposed on a person convicted after the effective date of this act of a similar crime under similar circumstances."

POSITIONS

DATE TYPED:   5-14-75

SUPPORT:  Attorney General

BILL NUMBER:  SB-42

SOURCE:   Senate Select Committee on Penal Institutions

AUTHOR:       Nejedly

AMENDED COPY: 4-28-75

Committee Votes:

Senate Floor Vote:

| COMMITTEE MEDICIAL | | |
|---|---|---|
| BILL NO.: SB 42 | | |
| DATE OF HEARING: 5-75 | AYE | NO |
| SENATORS: | | |
| Carpenter | ✓ | |
| Deukmejian | ✓ | |
| Grunsky | ✓ | |
| Marlowe | ✓ | |
| Presley | ✓ | |
| Raine | ✓ | |
| Robbins | | ✓ |
| Roberti | | |
| Stevens | ✓ | |
| Petris (V. Chair) | ✓ | |
| Song (Chairman) | | |
| TOTALS: | 8 | 1 |

| COMMITTEE  FINANCE | | |
|---|---|---|
| BILL NO.: SB 42 | | |
| DATE OF HEARING: 5-13-75 | AYE | NO |
| —— 9: | | |
| Alquist | ✓ | |
| Behr | | ✓ |
| Carpenter | ✓ | |
| Collier | ✓ | |
| Cusanovich | | |
| Holmdahl | | ✓ |
| Petris | | ✓ |
| Roberti | | |
| Rodda | ✓ | |
| Stiern | ✓ | |
| Way | | |
| Grunsky (V. Chair) | | |
| Beilenson (Chairman) | ✓ | |
| TOTALS: | 7 | 3 |

Assembly Floor Vote:

DIGEST

Replaces the present indeterminate sentence for felony convictions with a method for prescribing fixed sentences for all except certain specified offenses. Under the new system, the sentencing judge would impose a specific sentence selected from a statutory range of, for example, two, three or four years or three, four or five years and other ranges as specified in the bill. The judge has to specify the reason for his selection of the sentence imposed from the range of possible sentences.

In addition to the basic sentence:

1.  One year would be added for each prior pled and proved felony sentence served.

2.  Three years would be added for the use of a firearm in the commission of the offense, which fact is pled and proved at the trial on the offense for which sentenced.

3.  Two years would be added for the use of a deadly weapon in the commission of the offense when such use is pled and proved at the trial for the offense for which the felon is committed to the Department of Corrections.

If the person is sentenced to several consecutive terms, the time served would be set at the maximum of the more severe sentence plus one year for each of the other consecutive sentences.

Provides a reduction of 25 percent in time served for good behavior of those sentenced to a specific term. Conversely, it permits the Department of Corrections to request court approval of an extension of the inmate's term if he is physically dangerous to the public. The inmate in such cases would be entitled to a hearing with counsel and to confront witnesses against him. An adverse decision may be appealed to the Courts of Appeal.

Provides that inmates on the effective date of the bill (January 1, 1976) who have served the maximum term for which they could have been sentenced under this bill shall be eligible for immediate parole. The department would be allowed one year to release these inmates to parole and any additional time served until release would be subtracted from the prescribed period of parole. An estimated 2,350 inmates would be subject to this immediate

APPENDIX - 4

TABLE OF AUTHORTIES

Case Name:                                                          Page No.

Alleyne v. U.S.,
        113 S.Ct. 2151, 2155-65, [186 L.Ed. 315] (2013) . . . 16, 18, 19

Apprendi v. New Jersy,
        530 U.S. 466, 469-76 (2000)  . . . . . . . . . . . . 18, 19

Arbaugh v. Y H Corp.,
        546 U.S. 500, 502-506 [126 S.Ct. 1235] (2006)  . . . . . . .17

Association for Retarded Citizens v. Cal. Dept. of Develmental Services,
        38 Cal.3d 384, 391 [676 P.2d 150] (1985) . . . . . . . . . .7

County of San Diego v. Comm. on St Mandates,
        6 Cal.5th 196, 208 (2018)  . . . . . . . . . . . . . .8

Deputy Sheriff's Association of San Diego v. County of San Diego.,
        233 Cal.App.4th 573, 578 (2015). . . . . . . . . . . . .13

Fairbanks v. U.S.,
        181 U.S. 253, 294 [21 S.Ct. 698] (1901)  . . . . . . . . 9, 10

Floyd v. Banning,
        54 Cal.41, 43 (1879). . . . . . . . . . . . . . . . 13

Freedland v. Greco,
        45 Cal.2d 462, 468 [289 P.2d 892] (1955) . . . . . . . . . 9

Gibbs v. City of Napa,
        59 Cal.App.3d 148,153-154 (1976)  . . . . . . . . . . 8, 9

Haygood v. Younger,
        769 F.2d 1350, 1357 [1985 U.S. App. LEXIS 21946] (1985)  . . . 6

In re Janice D.,
        28 Cal.3d 210, 221 [168 Cal.Rptr. 455] (1980) . . . . . . 18, 19

In re Marriage Cases,
        43 Cal.4th 757, 869 [183 P.3d 384] (2008)  . . . . . . . .10, 14

In re Stanworth,
        22 Cal.3d 176, 181-186 [187 CR 783] (1982) . . . . . . . 7, 20

Logan v. Zimmerman Brush Co,. ET AL,
        455 U.S. 422, 429 [102 S.Ct. 1148] (1982)   . . . . . . . .22

Lucido v. Superior Ct.,
        51 Cal.3d 336, [272 CR 767] (1990)   . . . . . . . . . .2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[ ii ]

TABLE OF AUTHORITIES
(continued)

Juarez v. Arcadia Financial. Ltd.,
    152 Cal.App.4th 889, 904 (2007) . . . . . . . . . . . 9

King v. State DOJ,
    2019 LEXIS Cal. Superior 52557] (2019) . . . . . . . . . . .13

Maine v. Thiboutot,
    448 U.S. 1, 13 & 20 [65 L.Ed.2d 555] (1980). . . . . . . . .21

People v. Anderson,
    6 Cal.3d 628 [100 CR 152] (1972). . . . . . . . . . . . 20

People v. Olivas,
    17 Cal.3d 236, 250 [131 CR 55] (1976) . . . . . . . . 18, 19

PR/JSM Rivara LLC. v. Community Redevelopment Agency,
    180 Cal.App.4th 1475, 1482 (2009) . . . . . . . . . . . .14

Ring v. Arizona,
    536 U.S. 584, 602 [122 S.Ct. 2428] (2002)  . . . . . . 4, 5, 19

Sandin v. Conner,
    515 U.S. 472 477 [132 L.Ed.2d 418] . . . . . . . . . 11, 14

Scott A. v. Superior Court,
    27 Cal.App.3d 292, 295 [133 CR 683] (1972) . . . . . . . . 11

Smith v. Seaport Marine Inc.,
    981 F.Supp.2d 1188, 1207 (2013)    . . . . . . . . . 13

Specht v. Patterson,
    386 U.S. 605,608-609 [87 S.Ct. 1709] (1967) . . 4, 5, 16, 18, 19

Tousaint v. Mc.Carthy,
    801 F.2d 1080, 1095 [1986 U.S. App. LEXIS 31429] (1986)  . . .6

Twin City. Pipe Ln. Co. v. Harding Glass,
    283 U.S. 353, 356-57 (1931)   . . . . . . . . . . . 13

Vanderhoof v. People,
    152 Colo. 147, 149 [380 P.2d 903]   . . . . . . . . . 16

Wallace v. Zinman,
    27 Cal. 585, 591 [254 P. 946] (1927)   . . . . . . . . 11

Wolff v. McDonnell,
    418 U.S. 539, 555 [94 S.Ct. 2974] (1974)  . . . . . . 6, 11, 14

Zinermon v. Burch,
    494 U.S. 113, 127 [110 S.Ct. 975] (1990)   . . . . . . . 15

[ iii ]

## I.  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(1).  Bruce Koklich and Lawrence Remsen (Each as a Class of One) hereinafter referred to as Plaintiff's are not attacking or challenging their convictions or sentences in this Complaint, but are attacking the 1978 Proposition Seven Initiative, herein after referred to as Prop. 7.

(2).  Plaintiff's facial and factual evidence will demonstrate that the post-conviction administrative process used by Defendants in determining "punishment" for crime has been unconstitutionally transformed into an illegal and uncertain sentencing scheme, after the Indeterminate Sentence Law (ISL) had been specifically and intentionally repealed by the Legislature and Signed in to law by Governor Brown, taking effect on July 1, 1977.  As shown by the law itself, the repeal of the ISL included the Indeterminate Sentencing Law's PURPOSE, POLICY, WAYS, and MEANS necessary for it's existence (See: Stats 1976 Ch. 1139 & Stats 1971 Ch. 165).  This specific repeal of the ISL included eliminating uncertain MINIMUM to MAXIMUM sentencing that made up the foundation of the ISL as well as the parole agency's power to fix the exact punishment for the crime, as that power was returned back to the Courts (See: Pen. Code §§ 12 & 13).  What our State Supreme Court (CSC) has refused to acknowledge or reasonably address in any manner is that at NO TIME was the ISL or it's MINIMUM to MAXIMUM ISL sentencing structure ever reenacted as amended as required by the State Constitution (See: Cal. Const. Art. IV § 9.)  These facial facts alone prove without question that the Parole Agency has zero jurisdiction or statutory authority to fix or extend Plaintiff's sentences.  This Complaint specifically challenges the Parole Agency's "Essential Element" of Jurisdiction as supported by United States Supreme Court (USSC) authority.

[Pg.1 of 23]

## II.  NATURE OF THE ACTION

(3).  Plaintiff's in this action, as shown below, have specifically pled multiple USSC authorities along with multiple U.S. Constitutional violations documenting indisputable factual evidence warranting relief and yet the California Supreme Court (CSC) failed to provide a decision on the merits in violation of their own precedent See: Cal. Const. Art. VI § 10 Cf. Lucido v. Superior Ct., 51 Cal.3d 336, 366 [272 CR 767].). This CSC political avoidance of "important Public Policies" continues even though the facial and factually sustained case evidence and supporting authorities are straight forward and will survive judicial SCRUTINY.  The Three (3) indisputable facts which prove that uncertain and unconstitutional punishment for crime cannot exist under State and Federal Law are:

A.  On July 1, 1977 the State of California repealed it's ISL that has never been lawfully reenacted.  Any objective judicial officer should specifically plead and document how ISL reenactment was made or accomplished; and,

B.  The July 1, 1977 repeal included all the statutes for the "Purpose Policy, Ways, and Means", necessary for uncertain sentencing to exist after July 1, 1977.  The above ISL essential elements were never reenacted as amended; and,

C.  The July 1, 1977 repeal also included confining the Parole Agency's jurisdiction to one class of crimes and eliminated the Parole Agency's term fixing and extending Article III Powers, without which uncertain and disproportionate sentencing cannot exist.

III.  JURISDICTION AND VENUE FOR ORDERING DECLARATORY AND INJUNCTIVE RELIEF AND CHRONICLED BACKGROUND DOCUMENTING CALIFORNIA'S DISPROPORTIONATE AND UNCONSTITUTIONAL SENTENCING

(4).  In March of 1975, after a through investigation of recidivism issues, California Attorney General, Governor Brown and both houses of the Legislature believed that the Indeterminate Sentencing Law, was a failed

[Pg.2 of 23]

1    experiment with an 83% recidivism rate which had not sufficiently reduced
2    or deterred crime in California (See: Appendix #1).
3        (5).  Ten months before a final decision was made to repeal the
4    Indeterminate Sentencing Law (ISL) legislator John V. Briggs, who, in a
5    conspiracy with, a small faction of other Legislators that were connected
6    to the prison guards union and the goal for long term expansion of the
7    prison industrial complex, contacted Governor Brown and attempted to
8    intimidate him using dishonest means by advancing the Red Herring of "the
9    most violent crime wave California has ever experienced" and in what
10   appears to be criminal misconduct to urge the Governor's Veto of the
11   elimination of the ISL (See: Appendix #2.; Cf. Cal. Const. Art. IV § 15.)
12       (6).  Effective July 1, 1977, with the support of both parties, both
13   houses, the Attorney General, the California Legislature and the Governor,
14   repealed and replaced the Indeterminate Sentencing Law (ISL) with the
15   Determinate Sentencing Law (DSL) (See: Appendix #3.)  In repealing the 59-
16   year-old ISL, the Legislature found and declared that the "Purpose for
17   imprisonment for Crime was punishment for the crime itself" and repealed
18   the "PURPOSE, POLICY, WAYS, and MEANS" necessary for uncertain punishment
19   for crime to exist (See: SB-42 and AB-476, at Appendix #3).
20       (7).  Please take notice that in enacting the DSL, the Legislature
21   stated that one of the main reasons for repealing the uncertain "MINIMUM
22   to MAXIMUM" sentencing structure that made up the foundation of the ISL;
23   that was the fact that neither the prisoners or their family knew at
24   sentencing when or if they were going to be released, (See: Enrolled Bill
25   Report at Appendix #8).  Additional reasons touted by this court for
26   repealing the ISL's uncertain sentencing structure was because there was
27   no uniformity or proportionality in the actual time each person served for
28   the

1  offense (See: AB-476 Stats 1977 Ch. 165 § 15; Cf. Specht v. Patterson, 386

2  U.S. 605, 608-09 [87 S.Ct. 1209] (1967); accord Ring v. Arizona, 536 U.S.

3  584, 602 [122 S.Ct. 2428] (2002).

4    (8).  According to all the facts and law that existed as of July 1,

5  1977, the date of the ISL's repeal, the purpose of imprisonment became

6  "punishment for the crime itself" and uncertain ISL sentencing had ceased

7  to exist (See: Penal Code § 1170(a)(1) (See: Appendix #6 and SB-42 Pgs. 1

8  thru 4 at Appendix #3).

9    (9).  Effective July 1, 1977, after the repeal of the ISL and under the

10  newly enacted DSL, the punishment for the worst crimes, such as first

11  degree murder under Penal Code § 190 was: Death, Straight Life, or Life

12  without the Possibility of Parole, all which were determinate terms and an

13  exception to the ISL (See: Pen.Code § 190, Stats 1976 Ch. 1139 § 133).

14  The punishment for second degree murder was 5, 6, or 7 years.  On November

15  7, 1978, after Legislator Briggs violated multiple State Constitutional

16  statutes and abused his office related to advancing Prop. 7. The voters

17  passed and ratified Prop. 7 which was labeled the Murder Penalty

18  Initiative statute (See: Appendix #5, and Prop. 7's Title prepared by the

19  Attorney General).  In Prop. 7's Title, its author asked the voters to: 1.

20  Change and expand provisions for the death penalty as described on pgs. 32

21  thru 35 and 41 thru 46; 2. Change the sentence for first degree murder

22  from "Life" to "25 years to Life"; 3. Increase the punishment for second

23  degree murder; and 4. Stated that parole of convicted murders was

24  prohibited, except subject to earned good-time credits (See: Prop. 7's

25  Title on Pg. 32 of the 1978 Ballot at Appendix #5.)

26    (10).  The evidence and facts lodged herein are not off-handed or

27  spurious legal claims.  The fact that Prop. 7 should be adjudicated as

28

1  "Void on it's Face" is supported by multiple State and Federal authorities

2  and by one of California's most esteemed CSC judicial officers, which

3  strongly supports granting Plaintiff's request for Declaratory and

4  Injunctive relief to enjoin the Parole Agency from continuing to fix and

5  extend terms after repeal of its term fixing and extending power that was

6  returned back to the Courts (See: Penal Code §§ 671, 3020-3025 (all

7  repealed) & 5077, Stats 1976 Ch. 1139 & Stats 1977 Ch. 165).

8                    IV    STATEMENT OF FACIAL FACTS

9     (11).  Please take notice that on March 26, 1975 the California

10  Department of Justice Attorney General Evelle Younger stated; **1.** The ISL

11  was a failed experiment; **2.**  Expressed his support for Senate Bill 42 (SB-

12  42) which repeals the Indeterminate Sentencing Law (ISL) and provides a

13  "Seven Category Sentencing Structure" of Determinate and fixed prison

14  terms; and **3.** The enactment of the Determinate Sentencing Law (DSL) (See:

15  Appendix #1.)

16     (12).  On September 1, 1976 California Legislator John V. Briggs issued

17  a strongly worded letter claiming that the repeal of the ISL will create

18  the "most violent crime wave California has ever experienced."  This

19  letter was issued to then Governor Jerry Brown in an attempt to unlawfully

20  influence Governor Brown to veto SB-42 so as to keep the ISL in place.

21  The September 1 1976 letter is direct evidence that Briggs' goal was to

22  prevent the repeal of the ISL and it's uncertain terms of punishment of

23  inmates for crimes for personal and financial gain of a few, paid for,

24  State Law Makers (See: Appendixes 1 & 7; Cf. Cal. Const. Art IV § 15, see

25  also Specht, supra & Ring, supra.)

26     (13).  As previously stated, on July 1, 1977 the California Legislature

27  repealed and replaced the ISL with the DSL.  In repealing the 59-year-old

28

1    ISL, the Legislature found and declared that the purpose of imprisonment

2    for crime was "Punishment" for the crime itself and repealed the "PURPOSE,

3    POLICY, WAYS and MEANS" necessary for uncertain ISL punishment for crime

4    to exist (See Appendix #3, which includes AB-476 the Legislative

5    Declaration as to the purpose and policy for imprisonment as a Urgency

6    Statute and post SB-42 clean-up legislation).

7        (14).  On July 1. 1977 the new DSL went into effect (See: Stats 1977

8    Ch. 165 § 15, operative July 1, 1977).  On Nov. 7, 1978 the DSL was

9    ratified by the Proposition Seven voters.  Prop. 7 clarified and confirmed

10   that all prisoners were subject to the DSL, even those with ISL terms

11   whose crime was committed before the repeal of the ISL prior to July 1,

12   1977 who were already sentenced and incarcerated (See: Pen. Code § 1170.2

13   retroactive application of the DSL AB-476 at Pg.17:21-36 at Appendix #3).

14   In order to meet constitutional standards of the DSL those whose crime was

15   committed before repeal of the ISL were to have there terms fixed based on

16   SB-42's Seven Category Sentencing structure (See: Penal Code § 1170.2; &

17   Apendix #3 at AB-476 at Pg.17:21-36).

18       (15).  On November 7, 1978, the Briggs Initiative, aka Prop. 7,

19   confirmed that the voters intended that the increased 15 and 25 year

20   sentences were to be reduced for good behavior subject to Penal Code §

21   2931 Good Time Credits (See: Appendix #5 at Prop.7's title & Art. IV § 9;

22   Cf. Haygood v. Yonger, 769 F.2d 1350, 1357 [1985 U.S. App. LEXIS 21946]

23   (9th Cir. 1985); Cf Toussaint v. McCarthy, 801 F.2d 1080, 1095 [1986 U.S.

24   App. LEXIS 31429] (9th Cir. 1986); Accord  Wolff v. McDonnell, 418 U.S.

25   539, 555-559 [94 S.Ct. 2933] (1974).  Wolff confirmed that these credits

26   were mandatory [Alegory contract] credits and not discretionary.  Pursuant

27   to the Legislative Declarations in Penal Code § 1170(a)(1) and Prop. 7's

28
                          [Pg.6 of 23]

1  title both the 15 and 25 year terms allowed for release subject to Good

2  Time Credits (See: Prop. 7 Pen. Code § 190.4; Cf. Apendix #5).  No where

3  in Prop.7's Title or it's text was ANY type of ministerial agency vested

4  with the power to hold so called suitability hearings for crimes that

5  called for punishments for less than SB-42 Category Five or less than

6  Straight Life. (See: SB-42 and it's Seven category sentencing structure at

7  Appendix #3.)

8                    V.   FACTUALLY SUPPORTED SENTENCING DEFINITIONS
                              (codified by SB-42 & AB-476)
9

10     (16).  FOR LIFE & STRAIGHT LIFE are Category 5 Determinate sentencing

    terms that were punished less than Life With or Without the Possibility of
11

12  Parole (LWOP) and less than the Death Penalty.  SB-42 confirms that the

13  FOR LIFE sentence is a determinate Category Five crime (See: Appendix #3;

14  Cf. In re Stanworth, 22 Cal.3d 176, 181-186 [187 CR 783] (1982).

15     (17).  LIFE WITHOUT THE POSSIBILITY OF PAROLE (LWOP) is a Category 6

16  crime and has always been a determinate sentence and an exception to the

17  previous and now non-existent ISL (See: Appendix #3.)

18     (18).  DEATH PENALTY is and has always been a determinate sentence and

19  is the most sever Category 7 punishment. (See: Appendix #3).

20     (19).  As of July 1, 1977, all category four crimes were determinate

21  sentences as submitted, codified and approved by the Legislature (See:

22  Appendix #3) and  Prop. 7 voters, by way of Penal Code § 190 referendum

23  and could not change Legislative policy from determinate sentences with

24  parole "Subject to Good Time Credits" to uncertain minimum to maximum

25  sentencing and/or vest in a non-constitutional ministerial parole agency

26  the power to decide punishment for crime in any way (See: Cal. Const. Art.

27  III § 3; Cf.  Assoc. for Retarded Citizens v. Cal. Dept. Develmental

28

1   Serv., 38 Cal.3d 384, 391 [696 P.2d 150] (1985); Cf. Appendix #5,) any

2   attempt to transform the DSL by subterfuge into ISL sentences would have

3   been and continues to be unconstitutional (with no statute of limitations

4   on an unconstitutional sentence).   NOWHERE in Prop. 7 was the subject of

5   the Parole Agency and/or reenactment of the ISL ever proposed or discussed

6   in the tiniest way (See: County of San Diego v. Commission on State

7   Mandates, 6 Cal.5th 196. 208 (2018); Cf. Cal. Const. Art.II § 8(d); Cf.

8   Cal. Const. Art.IV § 9; accord Freedland v. Greco, 45 Cal.2d 462, 468 [289

9   P.2d 463] (1955).

10          VI.   REASONS FOR DECLARATORY AND INJUNCTIVE RELIEF

11   (COUNT ONE - Violation of Code Civ. Proc. § 410.10 & Civ. Code § 3281)

12          A.   PROP. 7 WAS DRAFTED AND PASSED IN COMPLETE LACK OF
            JURISDICTION AS THE INITIATIVE WAS INTENDED TO DEFEAT
13      THE DISTINCT LEGISLATIVE PURPOSE AND POLICY OF THE REPEAL
            OF THE ISL USING SUBTERFUGE, INDIRECTION AND EVASION.
14                      (Against all Defendants)

15   (20).  It is without question that Senator Briggs intended to defeat

16   the Legislative action of repealing the ISL using Prop. 7 as the vehicle

17   (See: Appendix # 2).  Governor Brown and the Senate Pro Tem anticipated

18   this misconduct and implemented AB-476 as the poison pill statute to

19   defend against some in the Legislature who intended to later defeat the

20   repeal of the ISL.  To demonstrate Gov. Brown and the Legislature's

21   Leadership intent to prevent later modification and reviving of the ISL by

22   the likes of Briggs, Lobbiests for the guards Union and others who promote

23   the mass incarceration industry, please review the modified text of P.C. §

24   1170(a)(1), specifically setting out the Public Policy:

25      "The Legislature finds and declares that the purpose of imprisonment
        for crime is punishment.  This purpose is best served by terms
26

27
                            [Pg.8 of 23
28

1  proportionate to the seriousness of the offense with provisions for
   uniformity in the sentences of offenders committing the same offense
2  under similar circumstances.  The Legislature further finds and
   declares that the elimination of disparity and the provision of
3  uniformity of sentences can be best achieved by <u>determinate</u> sentences
   fixed by statute in proportion to the seriousness of the offense as
4  determined by the legislature to be imposed by the Court with specified
   discretion. <u>This declaration applies to persons sentenced under this</u>
5  <u>section or Section § 1168.</u> (See: AB-476 at Pg.17:21-36 at Appendix # 3).
   )
6
   (21).  The underlined addition to the clean-up legislation (AB-476) was
7
   added to assure that P.C. § 1168 (the ISL Penal Code Statute) was required
8
   to comply the DSL so that no later statutory construction could defeat the
9
   DSL and the Legislative declaration by indirection or evasion:
10
       "Taking into consideration the policies and purposes of the act, the
11     applicable rule of statutory construction is that the purpose sought
       to be achieved and evils to be eliminated have a important place in
12     ascertaining the legislative purpose and policy.  (citations) '[In]
       the interpretation of statutes, when two constructions appear
13     possible, this court follows the role of favoring that which leads to
       the more reasonable result' (citation).  And, 'That construction of a
14     statute should be avoided which affords an opportunity to evade the
       act, and that construction is favored which would defeat subterfuges,
15     expediencies, or evasions employed to continue the mischief sought to
       be remedied by the statute, or to defeat compliance with its terms,
16     or any attempt to accomplish by indirection what the statute
       forbids.'" See: 50 Am Jur., statutes, § 361; (citation) (See:
17     <u>Freedland v. Greco</u>, 45 Cal.2d. 462, 468 [289 P.2d 463] (1955); Cf.
       <u>Fairbanks v. United States</u>, 181 U.S. 283, 294 [21 S.Ct. 648] (1901).
18
19     (22).  Additional and more recent authority also supports <u>Freedland</u>

20  (Ibid.):

21     "statutes should be interpreted to promote rather than defeat the
       legislative purpose and policy. (citation.) '[I]n the interpretation
22     of statutes, when two constructions appear possible, this court
       follows the rule favoring that which leads to the more reasonable
23     result.' (citation)... 'That construction of a statute should be
       avoided which affords and opportunity to evade the act, and that
24     construction is favored which would defeat subterfuges, or evasions
       employed to continue the mischief sought to be remedied by the
25     statute, or to defeat compliance with its terms, or any attempt to
       accomplish by indirection what the statute forbids'" (citations)
26     (See: <u>Juarez v. Arcadia Financial Ltd.</u> 152 Cal.App.4th 889, 904 [16
       Cal.Rptr.3d 382] (2007).
27

28
                              [Pg.9 of 23]

1   (24). The authorities cited herein prevent the illegal inference that

2   Prop. 7 could imply the revival or reinstatement of the ISL, and

3   additionally, confirms that Defendants lack of jurisdiction over

4   Plaintiff's sentences who both have SB-42 category four fixed terms.

5   (25). Plaintiffs assert that Prop. 7 is additionally "Void on its

6   Face", notwithstanding how it is being wrongly administrated today, as

7   supported by numerous other controlling authorities, which Briggs tried to

8   evade, (See: Gibbs v. City of Napa, 59 Cal.App.3d 148, 153-154 [130

9   Cal.Rptr. 382] (1976); Cf. In re Marriage Cases, 43 Cal.4th 757, 869 [183

10  P.3d 384] (2008).

11  (26). Briggs illegally executed exactly what controlling authority

12  from this High Court (and the U.S. High Court) condems:

13      "A proposed initiative ordinance [or statute] cannot be used as an
        indirect or backhanded technique to invoke the referendum process"
14      (See: Gibbs supra, at Pgs. 153-154.)

15  (27). Controlling Federal authority is also on point.

16      "In other words, that decision affirms the great principle that what
        cannot be done directly because of constitutional restriction cannot
17      be accomplished indirectly by legislation which accomplishes the same
        result. But that principle is not dependent alone upon the case
18      cited" (See: Fairbanks v. U.S., supra, at Pg. 294 [21 S.Ct. 648]
        (1901)
19

20  (28). There is also no question that as a State Legislator, Senator

21  Briggs intentionally and unlawfully deceived the voters by failing to

22  present the subject of reenactment of the ISL and it's Minimum to Maximum

23  Sentencing Structure, along with failing to advance the PURPOSE, POLICY,

24  WAYS and MEANS necessary to carry uncertain sentencing into effect, for

25  voter approval. And if Defendants do wrongfully claim that the voters did

26  revive the ISL, please explain how, as this was not a subject submitted in

27

28                  [Pg.10 of 23]

1   Prop. 7. and thus those claims would be void. (See: Cal. Const. Art. II §

2   8(d) & Art. IV § 9; Cf. Scott A. v. Superior Court, 27 Cal.App.3d 292, 295

3   [133 CR 683] (1972); accord Wallace v. Zinman, 200 Cal.585, 590 254 P.

4   946] (1927); Cf. 16 Am.Jur.2d Constitutional Law § 256, et seq.).

5   Count II - Civil Conspiracy under Cal. Civ. Code § 3281 & 42 U.S.C. § 1985(3)

6      B.   BOTH SB-42/AB-476 AND PROP. 7 MANDATED PEN. CODE § 2931 GOOD
         TIME CREDITS ON CATEGORY FOUR AND BELOW SENTENCES
7                    (Against All Defendants)

8      (29).  Plaintiff's Good Time Credits have been affirmatively

9   established as mandatory by the Legislature via SB-42/AB-476, this is

10  especially true as these credits were provided to effectuate a "Shortened

11  Prison Sentence" (See: Sandin v. Conner, 515 U.S. 472, 477 [132 L.Ed.2d

12  418] (1995); Cf. Wolff, Supra, at Pg. 555. (See: Appendix # 3).  Prop. 7

13  additionally confirms that the only way a category four offender (15 or 25

14  year terms) can be released is through the gateway of good behavior and

15  contractual accumulation of Good-Time credits.  These credits have been

16  affirmatively established as a mandatory Aleatory Contract by Wolff v.

17  McDonnell, 418 U.S. 539, 555-559 [94 S.Ct. 2933] (1974).

18     (30).  Moreover, Prop. 7 did not contain the subjects of taking the

19  power/duty to parole and administration of Pen. Code § 2931 from the Dept.

20  of Corrections and vest it somewhere else.  Likewise, Prop. 7's Title

21  specifically states the only way the prisoner can be released on parole is

22  "... [Subject] to-good-time credits" and nothing more (See: Appendix # 5).

23  Otherwise, those persons within the Class who specifically performed

24  according to the Pen. Code § 2931 contract have been denied their earned

25  liberty under a mandatory Aleatory Contract without due process of the law

26  (See: Wolff, Supra, at Pg. 555).

27

28                      [Pg.11 of 23]

(Count III - Violation of Cal. Const. Art I § 9 & Civ. Code § 1623)

C.  THE CALIFORNIA CONSTITUTION AND MULTIPLE CONTROLLING STATE AND
    FEDERAL AUTHORITIES PROHIBIT THE PASSAGE OF LAW IMPAIRING
THE OBLIGATION OF CONTRACTS, PROP. 7 MANDATED PEN. CODE § 2931
        GOOD TIME CREDITS THAT COULD NOT BE MODIFIED OR
                 TAKEN AWAY BY ANY STATE LAW.
                (Against All Defendants)

(31).  The state provided via Aleatory Contract (SB-42, AB-476 and

Prop. 7) Good Time/Participation credits via Penal Code §§ 2931(a) &

3000(a) (See: Appendix # 4).  The Defendants all have foreknowledge that

these mandatory credits could not be lawfully withheld or taken without

Due Process of law (See: Pen. Code § 2932 Stats 1977 Ch. 165 § 38).  The

act of illegal confiscation of credits without Due Process was intended to

wrongfully extend the term of imprisonment for thousands of repressed,

indigent and illiterate prisoners, when their attorneys should have known

better.  Senator Briggs with additional patronage from the guards union

and other mass incarceration supporters passed a number of tough on crime

Legislative bills in direct comnflict with SB-42's Seven Category

Sentencing structure with intent to unlawfully take away plaintiff's early

release Good Time credits given by the Legislature to all inmates equally

in July 1, 1977 (See: Cal. Const. Art. 1 § 7(a)&(b).)  These attempted and

wrong confiscations of contract clause Good Time credits (specifically the

mandatory credits provided by P.C. § 2931 as adopted by Prop. 7 voters)

were wrongly reduced and repeatedly taken, through an unlawful process to

try and defeat the law of contracts See: Cal. Const. Art 1 § 9 & U.S.

Const. Art I § 10(1); Cf Pen. Code §§ 190, 190.1, 190.2, 190.3, 190.4 &

190.5.

[Pg.12 of 23]

1    (32).  Both current CSC authority (2019) and dated CSC authority from

2  1879 prohibit and limit the Legislature's power to modify any such

3  contract clause or protected Due Process obligation:

4    "Article I § 9 of the California Constitution prohibits the passage
     of a law impairing the obligation of contracts, 'The contract clause
5     limits the states power to modify its own contracts with other
      parties, as well as contracts between other parties' (citation).
6     Analysis of a contract clause claim requires inquiry into '(1) the
      nature and extent of any contractual obligation ... and (2) the scope
7     of the Legislature's power to modify any such obligation (citations)
      The party asserting a contract clause claim has the burden of "making
8     out a clear case, free from all reasonable ambiguity,' a construction
      violation occurred (citation)" See: Floyd v. Blanding (1879) 54
9     Cal.41, 43; Cf. Deputy Sheriffs' Assn. of San Diego County v. County
      of San Diego, 233 Cal.App.4th 573, 578 [182 Cal.Rptr.3d 759] (2015);
10    accord King v. State DOJ, 2019 LEXIS Cal.Superior 52557)."

11   (33).  Federal authority is also in accord when the state attempts to

12  contravene a stated Public Policy (codified Good Time/Behavior credits for

13  the safety of state officers, other inmates and rehabilitation as

14  authorized via the legislature and the people's initiative):

15    "The principle that contracts in contravention of public policy are
      not enforceable should be applied with caution and only in cases
16    plainly within the reasons on which the doctrine rests. 'Particularly
      where the party attacking the contract has had the benefit of
17    performance by the other party and now seeks to avoid his own
      promise.' Twin City Pipe Line Co. v. Harding Glass, 283 U.S. 353,
18    356-57 [51 S.Ct. 476] (1931) (citation) ["the promisor may not avoid
      performing a perfectly legal promise because he has also made a
19    separate, illegal undertaking'); (citation) ['It is only in clear
      cases that contracts will be void [for illegality][ (See: Smith v.
20    Seaport Marine, Inc., 981 F.Supp.2d 1188, 1207 [2013 U.S. Dist. LEXIS
      157358] (2013).

21   (34).  The Defendants without question violated both Plaintiff's

22  constitutional rights when they did not follow the credit forfeiture

23  procedure after a specific legal promise, which is required when revoking

24  Legislatively Granted Good Time Credits that are strongly protected by the

25  Contract clause and the Due Process clause.

26

27

28                          [Pg.13 of 23]

1   (35).  Plaintiff's request a Declaration from the CSC confirming that

2   both Plaintiff's constitutional contract clause rights were and continue

3   to be violated (invalid procedures to revoke Good-Time credits) and Order

4   appropriate remedy which does not include a sentencing modification or

5   Order of Release:

6       "We therefore conclude that it was proper for the Court of Appeals
        and the District Court to determine the validity of the procedures
7       for revoking Good-Time credits and to fashion appropriate remedies
        for any constitutional violations ascertained, short of ordering the
8       actual restoration of good time already canceled." See: Wolff v.
        McDonnell, 418 U.S. 539, 555 [94 S.Ct. 2974] (1974); Cf. Sandin v.
9       Conner, Supra, at Pg.477).

10  (36).  Additional state authority confirms that once a Legislative

11  Policy is established (Good Time Credits) See: (P.C. § 1170(a)(1) &

12  Prop.7's P.C. § 2931 credits) that policy is not subject to modification

13  via referendum or initiative:

14      "The agency's acts thereafter fall 'within the executive or
        administrative functions' And case authority makes it "clear that
15      once the legislative policy is established ... the administrative act
        following therefrom are not subject to referendum" (Citations) (See:
16      PR/JSM Rivara LLC v. Community Redevelopment Agency, 180 Cal.App.4th
        1475, 1482 [104 Cal.Rptr.3d 52] (2009).
17

18  (37).  It is a sad day in lower class and minority America when Briggs

19  and other culpable legislators from both parties seek to enrich themselves

20  using subterfuge and misdirection (See: Appendix #7).  This unlawful

21  enrichment continues by discarding the Rule of Law and disregarding the

22  State and Federal constitutions; which had the result of denying equal

23  protection of the law and erasing Penal Code § 2931 credits and DSL

24  sentencing for many, mostly black, brown and illiterate inmates:

25      "In other words, in the majority's view, the Legislature's own
        actions have by indirection caused this initiative statute to be
26      erased from the books, to say the least, I find such a constitutional
        approach troubling." (See: In re Marriage cases, 43 Cal.4th 757, 869
27      [183 P.3d 384] (2008)

28

1    (38). The federal constitution violations are also massive and

2   blatant. Justice may be possible when one actually refrains from wrongful

3   procedural barring a complaint which validates the irrefutable facts and

4   actually reviews and analyzes the merits from both a state and federal law

5   prospective. Like the state law cited ante, federal authority also

6   prevented Briggs from manipulating the referendum process which he

7   temporality achieved through the "Void on it's Face" Prop. 7 Initiative:

8        "Applying this [Federal] test, the Court usually has held that the
9        Constitution requires some kind of a hearing <u>before</u> the State
           deprives a person of liberty or property (Citation) ("'[T]he root
10      requirement' of the Due Process Clause" is "'that an individual be
          given an opportunity for a hearing <u>before</u> he is deprived of any
11      significant protected interest'", hearing required before
          termination". (See: <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (110 S.Ct.
12      975] (1990).

13   (39). No hearing was ever provided before our § 2931 credits were

14   unlawfully confiscated. Because of the large scale of mass depravations,

15   a Jury trial would be necessary especially on the "At Issue" complication

16   of a due process violation which eliminates any perceived Subject Matter

17   Jurisdiction as to sentencing.

18      (Count IV - Grounds for Declaratory Relief under Gov. Code § 11350)

19             D.  ONGOING REQUEST FOR JURY TRIAL TO PROVE UP
                  THE DEFENDANTS TOTAL LACK OF SUBJECT MATTER
20                  JURISDICTION OVER PAROLE AGENCY HEARINGS

21   (40). This Complaint when served upon Defendant Jennifer Shaffer

22   serves as "Notice" to her and the Board commissioners of the "Total Lack

23   of Subject Matter Jurisdiction" over Plaintiffs Bruce Koklich and Lawrence

24   Remsen. As Shaffer and her subordinate commissioners are performing a

25   Legislative and Judicial function without a Constitutional Amendment in

26   violation of the Rule of Law. The facts confirm that the parole agency

27   under Ms.Shaffer or her designee completely "Lacks Subject Matter

28

1    Jurisdiction" to the undefined term "Suitability" at any Hearing. In

2   light of Pen. Code § 3000, Ms.Shaffer cannot claim or show how the Parole

3   Agency received jurisdiction over Plaintiff's sentences, nor can

4   Ms.Shaffer or her counsel overcome USSC controlling authority:

5       "It makes one conviction the basis for commencing another proceeding
        under another Act to determine whether a person constitutes a threat
6       of bodily harm to the public, or is an habitual offender and mentally
        ill.  That is a new finding of fact (Vanderhoof v. People, 152  Colo.
7       147, 149 [380 p.2d 903]) that was not an ingredient of the offense
        charged. The punishment under the second act is criminal punishment
8       even though it is designed not so much as retribution as it is to
        keep individuals from inflecting future harm." (See: Specht v.
9       Patterson, 386 U.S. 605, 508-609 [87 S.Ct. 1209] (1967); Cf. Alleyne
        v. U.S., 113 S.Ct. 2151, 2155-65, [186 L.Ed.2d 315] (2013).
10

11   (41).  Please use this Complaint as a request for Ms. Shaffer to issue

12   a pre-hearing memo and explain why she is not violating both above U.S.

13   Supreme Court controlling authorities.  Please also take notice that

14   Plaintiffs also specifically advance an on-going Objection to the

15   undefined and hopelessly subjective term "Suitability" in the

16   jurisdictional context.

17   (42).  The strongly contested facts and essential elements which must

18   be decided by a Court of Law are:

19   A.  Prop.7 is "Void on it's Face" as Briggs attempted to do indirectly
         by initiative what he could not do by Referendum because he did not
20       have the votes to achieve the repeal of the DSL without reenacting
         as amended the ISL and that would be a violation of numerous
21       constitutional and statutory controlling laws, as specifically pled
         herein.
22

23   B.  The July 1977 Legislature stated and enacted its policy to repeal
         the indeterminate sentencing law including it's Purpose, Policy,
24       Ways, and Means and it was never reenacted by the legislature
         thereby eliminating the Parole Agency from assuming any
25       jurisdiction over category 4 and below crimes to either term fix or
         term extend based on the hopelessly indefinable term of
26       suitability. (See: Specht, Supra, at Pg.608-609; Cf Ring, Supra, at
         Pg. 602; accord Alleyne, Supra, at Pg. 2155-65).

27

28
                              [Pg.16 of 23]

(43). Regardless of a judicial bias and this courts strong motivation to side with the illegal actions of the mass incarcerator's, and to avoid and repudiate Plaintiff's numerous indisputable facts supported by controlling state and federal authority, Plaintiff's more than "Suggest", they "Demand" a decision on the merits and/or a jury trial for all members of the class to confirm or reject the essential elements which continue to be "At Issue". This fundamental right is strongly supported by USSC controlling authority:

"If satisfaction on an essential element of a claim is at issue, however, the jury is the proper trier of [jurisdictional] contested facts (citation)" (See: Arbaugh v. Y H Corp., 546 U.S. 500, 502 [126 S.Ct. 1235] (2006), (Emphasis added).

(Count V. Acting Without Jurisdiction - 28 U.S.C § 1343(3))

E.   THE PAROLE AGENCY IS ACTING WITHOUT JURISDICTION AND IN BLATANT DISREGARD TO THIS COURTS OWN PRECEDENT AS WELL AS THE NINTH CIRCUIT, THE USSC, AND CONTINUES TO ABUSE IT'S LACK OF ARTICLE III POWER TO ILLEGALLY EXTEND PRISON TERMS AS AN ONGOING FORM OF PUNISHMENT FOR A CRIME THAT HAS NOT YET BEEN COMMITTED UNDER THE GUISE OF SUITABILITY, WHICH IS IN AND OF ITSELF A WORD THAT CANNOT BE DEFINED TO ANY DEGREE OF CERTAINTY
(All Defendants)

(44). As shown through this Petition and according to State law, every person whose crime was committed after repeal of the ISL, along with its purpose and policy, and who were not sentenced to serve a "Straight Life" punishment/sentence, which has no minimum term, are having their sentence unconstitutionally administered in Excess of the sentencing courts Jurisdiction. Furthermore, Plaintiffs are having their contractually earned Good Time and Participation Credits and parole release dates unlawfully taken from them without due process and in violation of equal protection of the law. This is so because they are denied their earned release date by a non-constitutional ministerial Parole Agency who in a conspiracy with John Briggs teamed up with legislators Burton and former

1  Lierutenant Governor Ed Reinecke and Attorney General Lockyer, to enlarged
2  the Parole Agency's authority to hold so-called suitability hearings on
3  less than SB-42 category five crimes without authority of law.  For
4  example, it was the Parole Agency who had its term fixing and extending
5  powers repealed for abuse, and who continue to usurp legislative and
6  judicial powers to decide and impose different punishment for different
7  prisoners committing the same crime.  This same Parole Agency continues to
8  enlarge its powers in violation of Cal. Const. Art. III § 3 every time it
9  exceeds it's jurisdiction and extends one's prison term by deciding who is
10 and who is not a danger to public safety; which is a exclusive judicial
11 function that cannot be preformed by a ministerial agency against a class
12 of offender they have no jurisdiction over.  Moreover, Plaintiff's are
13 entitled to a trial on the matter of the their alleged danger to public
14 safety.  Otherwise, the State's Constitution and United States Supreme
15 Court precident are violated (See: Cal. Const. Art. III § 3; Cf. People v.
16 Olivas, 17 Cal.3d 236, 243-44. 246-47 [131 CR 55] (1976); accord U.S.
17 Const. 5th, 6th, & 14th Amend.'s; Cf. Specht, Supra, Pg.608-609; Cf. Ring,
18 Supra, at Pg. 602 (2002); accord Apprendi v. New Jersy, 530 U.S. 466, 469-
19 476 (2000, [Depravation of liberty without Due Process]; Cf. Alleyne,
20 Supra, at Pgs. 2155-65.)

21            VI.  AN ESTEEMED CSC JUSTICE HAS CONFIRMED
                THE FACT THAT THE ISL WAS NEVER REENACTED.
22
23 (45).  On October 23, 1980 the distinguished CSC Justice J. Richardson
24 issued his opinion in In re Janice D. (Infra), This opionion was
25 promulgated two years after Prop. 7 and was ratified and implemented into
26 law.  Justice Richardson confirmed that (disent):

27

28                    [Pg.18 of 23]

1    "There is nothing whatever in the text of the measure [Prop. 7]
     itself nor its accompanying analysis which suggests that the ISL
2    would be partially revived, or that new indeterminate life terms were
     thereby established for murder, or that existing sentences therefor
3    would be moderated.  To the contrary, the voters were told other
     wise." (See: In re Janice D., 28 Cal.3d 210. 221 [168 Cal.Rptr. 455]
4    (1980).

5    (46).  Justice Richardson's opinion, supported with numerous

6    constitutional and common law authorities, established that the ISL and

7    it's terms cannot be reenacted by adopting a section from a repealed law

8    and/or without disclosing to the voters the specific intent of the measure

9    to: 1. revive the Purpose, Policy, Ways, and Means necessary for uncertain

10   and indeterminate sentences to re-exist for category 1-4 crimes, which

11   never happened; 2.  revive, reinstate, or constitutionalize the Parole

12   Agency's Article III power to fix or extend terms of confinement for

13   category 1-4 crimes, which never happened; .3.  re-authorize a non-

14   constitutional ministerial/administrative agency to execute both judicial

15   and legislative powers to decide different punishments for different

16   offenders committing the same crime (in violation of the State and Federal

17   separation of powers doctrine) all when the intended result (under the

18   guise of unsuitabililty) enlarges punishment for a crime that has not yet

19   been committed. (See: Olivas, Specht, Ring, Apprendi, and Alleyne,

20   Supra.).

21                          VII.  CONCLUSION

22   (47).  Lastly, what makes the Executive Branch Parole Agency's actions

23   so outrageous is how prisoners are having the punishment for their crimes

24   arbitrarily decided by the same branch of government charged with their

25   prosecution.  This is not only fundamentally unfair, but such a

26   administrative process cannot be tolerated to exist under the American

27   Justice System (maybe in Iran, Russia or China, but not here).  However,

28

1   as shown throughout this Complaint, and to add insult to injury, these

2   same State Officials have taken it upon themselves, without authority of

3   law, to decide punishment for crime for personal and financial gain in

4   such a way that every offender committing the same crime is serving a

5   different punishment being administratively decided in violation of Cal.

6   Const. Art. III § 3.  In Plaintiff's cases the amount of time they have

7   already served is grossly disproportionate and unlawful.  Accordingly,

8   based on all the above facts that Plaintiff's adopt herein, we

9   respectfully request that this Court consider and compare the case of

10  Dennis Stanworth.  Mr. Stanworth was sentenced to death following his plea

11  of guilty to two first degree murders and two attempted murders.  He also

12  pled guilty to four counts of aggravated kidnaping, forcible rape, oral

13  copulation, and robbery.  Because of People v. Anderson, 6 Cal.3d 628 [100

14  CR 152] (1972), Stanworth's sentence was modified to "Life" with the

15  possibility of Parole.  In 1979, the Parole Agency fixed Stanworth's term

16  at twenty-three years, four months and nine days.  That is 3.9 years for

17  each of Stanworth's Six Life Sentences and other crimes.  Also noteworthy,

18  the court held that Stanworth was not sentenced to an indeterminate

19  sentence but to a determinate life sentence, See: In re Stanworth, 33

20  Cal.3d 176, 177-183 [187 CR 783] (1982). (See: Appendix # 9, Para. # 13).

21      (48).  It is outrageous government conduct when a non-constitutional

22  ministerial agency can give itself jurisdiction and make law to deny

23  parole for speculative unsuitabililty reasons which clearly is punishment

24  for a crime that has not yet been committed.  And as this Complaint shows

25  is happening today, at the voters and taxpayer expense, for personal and

26  financial gain, and to further the mass incarceration industry, which is

27  needlessly and wrongly misappropriating Billions of taxpayer correctional

28                              [Pg.20 of 23]

1  dollars while our streets are lined up with homeless people in need of

2  shelter.  Plaintiff's posit that Administrative action after Nov. 7, 1978

3  has been taken for personal gain by those who profit from failing to

4  enforce the "Rule of Law" and for the purpose of continuing an

5  unconstitutional and illegal administrative process by using, extorting

6  and exploiting the minority population (mostly Blacks and Hispanics) as

7  pawns and chattle, please closely review Appendix #7.

8    (49).  Based on the facial facts presented by Plaintiff's request that

9  the CSC follow the Rule of Law mandated by the State Constitution, U.S.

10  Constitution, and their own CSC precedent including State Statutory and

11  Common Law authorities.  Based on the indisputable facts contained herein,

12  the "At Issue" subjects presented are ripe for Federal analysis:

13  "The Civil Rights Act...created criminal penalties for conspiracy to
   deprive persons of rights secured by 'the Constitution or laws'...a major

14  purpose of the Civil Rights Acts was to "involve the federal judiciary in
   the effort to exert federal control over state officials who refuse to

15  enforce state law" (See: Maine v. Thiboutot, 448 U.S. 1, 13 & 20 [65
   L.Ed.2d 555] (1980)

16

17    (50).  Plaintiff's Complaint herein warrants the Original Jurisdiction

18  of this CSC because this "Substantial Issue" is of large State Wide impact

19  and continues to allow "based on the facts presented," the likelihood that

20  many more mostly Black and Hispanic prisoners will needlessly continue to

21  be wrongly incarcerated way beyond their DSL release date.

22    (51).  The State cannot arbitrarily confiscate Plaintiff's

23  contractually secured Liberty Interest to Pen. Code § 2931 Good Time and

24  Participation Credits by falsely transforming a DSL sentence into a ISL

25  sentence and deny the Plaintiff an opportunity to be heard on their

26  Contract Clause and Liberty Interest due process right to Good Time

27  Credits which assure a much earlier release, especially with out a

28  hearing:

[Pg.21 of 23]

"Similarly, the Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from Denying potential litigants use of established adjudicatory procedures, when such an action would be 'the equivalent of denying them an opportunity to be heard upon their claimed [rights]'" (Citation) (See: Logan v. Zimmerman Brush Co. ET AL, 455 U.S. 422, 429 [102 S.Ct. 1148] (1982).

(52).  Indeed, any conclusion to eliminate the Due Process requirements would allow the State to destroy at will virtually any State Created contract clause or Liberty Interest right that the Plaintiff's have.:

"While the Legislature may elect not to confer a property interest,... it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." (See: Logan, Ibid. at Pg.432). (Emphasis added).

(53).  When considering the herein facts this Court should assign counsel to Plaintiff's and decide the case on the merits as supported by the documentary evidence and facial facts presented.

(54).  What chance does a reasonable person have to protect their federally guaranteed rights after those Constitutional Rights were denied them because, like in the case at bar, the State's highest court refuses to follow its own decisions, obey the mandatory provisions set forth by the Legislative policy, and the State's Constitution.

PRAYER FOR RELIEF

(55).  WHEREFORE, for all the foregoing reasons, Plaintiff's respectfully request relief as follows:

A.    Issue a Temporary Restraining order and preliminary injunction staying, restraining and enjoining Defendants from holding any further Parole Agency Board Hearings for category one thru four crimes as specified in SB-42 & AB-476, which includes the repeal of the Purpose, Policy, Ways, and Means for the Indeterminate Sentence Law parole agency hearings.

B.    Issue a Judicial Declaration confirming that the Proposition Seven Initiative is "Void on it's Face" for the reasons previously presented in this Complaint.

[Pg.22 of 23]

C. Based on U.S. Supreme Court precedent Court to issue a judicial declaration confirming that Pen. Code § 2931 Good Time Credits are a State created Liberty Interest right that is protected by the Due Process clause (See: ¶'s 31-39 above).

D. Find and declare that Defendants have violated the law of contracts, specifically Pen. Code § 2931 and that Plaintiff's are entitled the provisions of the Aleatory Contract according to State and Federal Contract Clause authority.

E. Issue an Order granting such other and further relief as the Court may deem just and proper.

VERIFICATION - C.C.P. §§ 2015.5 & 28 U.S.C. § 1746

(56). As the Plaintiff's in the above entitled action, we declare under penalty of perjury under the laws of the State of California and the laws of the United States of America, that the foregoing is true and correct. Executed on __June__ (month) 4th (day), 2023.

Respectfully Submitted

Bruce Koklich
Plaintiff in Pro Se'

Lawrence Remsen
Plaintiff in Pro Se'

"There is no crueler tyranny than which is perpetrated under the shield of law and in the name of Justice"

Montesquieu, cira, 1742

[Pg.23 of 23]

APPENDIX - 8

ARTICLE 2

Determining and Redetermining Term of Imprisonment

[Part 3, Of Imprisonment and the Death Penalty—Title 1, Imprisonment of Male Prisoners in State Prisons—Chapter 8, Length of Term of Imprisonment and Paroles—Article 2, Determining and Redetermining Term of Imprisonment; Article, consisting of §§ 3020–3025, added Stats 1941 ch 106 § 15. Repealed Stats 1977 ch 165 § 43, effective June 29, 1977, operative July 1, 1977.]

## §§ 3020, 3021, 3022, 3023, 3024, 3024.5, 3025. [Sections repealed 1977.]

Added Stats 1941 ch 106 § 15; Stats 1947 ch 1381 § 3. Amended Stats 1951 ch 671 § 12, ch 1078 § 1; Stats 1953 ch 722 § 1; Stats 1957 ch 1617 § 3, ch 2256 §§ 54-56; Stats 1963 ch 1702 § 1, ch 2074 § 2; Stats 1965 ch 237 § 2; Stats 1976 ch 1139 §§ 278.2, 280, operative July 1, 1977; Stats 1977 ch 2 § 6, effective December 16, 1976, operative July 1, 1977. Repealed Stats 1976 ch 1139 § 279, operative July 1, 1977; Stats 1977 ch 165 § 43, effective June 29, 1977, operative July 1, 1977.

**Historical Derivation:**

§ 1168 as that section read prior to the 1941 amendment.

Please take notice of the repeal statutes
including Pen. Code §§ 671, 3020 to 3025 ante.

WEST'S CALIFORNIA CODES                                          PENAL CODE

609                                    PAROLES
Title 1

which may be mandated as a condition of parole. Such examination may be performed by psychiatrists, psychologists, or licensed clinical social workers. *(Formerly § 3001, added by Stats.1977, c. 1130, § 5. Renumbered § 3002 and amended by Stats.1978, c. 582, § 3.)*

**§ 3003. Parole; return to county of commitment or another county or state**

(a) Except as provided in subdivision (d), an inmate who is released on parole shall be returned to the county from which he or she was committed.

For purposes of this subdivision, "county from which he or she was committed" means the county where the crime for which the inmate was convicted occurred.

(b) Notwithstanding subdivision (a), an inmate may be returned to another county in a case where that would be in the best interests of the public and of the parolee. If the Board of Prison Terms setting the conditions of parole for inmates sentenced pursuant to subdivision (b) of Section 1168 or the Department of Corrections setting the conditions of parole for inmates sentenced pursuant to Section 1170 decides on a return to another county, it shall place its reasons in writing in the parolee's permanent record. In making its decision, the authority may consider, among others, the following factors:

(1) The need to protect the life or safety of a victim, the parolee, a witness or any other person.

(2) Public concern that would reduce the chance that the inmate's parole would be successfully completed.

(3) The verified existence of a work offer, or an educational or vocational training program.

(4) The last legal residence of the inmate having been in another county.

(5) The existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that the inmate's parole would be successfully completed.

(6) The lack of necessary outpatient treatment programs for parolees receiving treatment pursuant to Section 2960.

(c) Notwithstanding any other provision of law, an inmate who is released on parole shall not be returned to within 35 miles of the actual residence of a victim of, or a witness to, a violent felony as defined in paragraphs (1) to (7), inclusive, of subdivision (c) of Section 667.5 and any felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 or 12022.9, if the victim or witness has requested additional distance in the placement of the inmate on parole, and if the Board of Prison Terms or the Department of Corrections finds that there is a need to protect the life, safety, or well-being of a victim or witness.

(d) An inmate may be paroled to another state pursuant to any other provision of law. *(Added by Stats.1982, c. 1407, § 1. Amended by Stats.1985, c. 1419, § 2; Stats.1987, c. 283, § 1; Stats.1987, c. 1110, § 1; Stats.1988, c. 1367, § 1; Stats.1990, c. 148 (A.B.2748), § 1; Stats.1990, c. 1692 (A.B.4237), § 1.)*

Legislative findings and declarations for 1985 amendment, see note under § 2960.

Effect of amendment of section by two or more acts at the same session of the legislature, see Government Code § 9605.

Cross References

Release of persons convicted of violent felonies, notification of certain local law enforcement officials, see § 3058.6.

**§ 3004. Parole; electronic monitoring or supervising devices**

Notwithstanding any other law, the Department of Corrections and the Board of Prison Terms may require, as a condition of release on parole or reinstatement on parole, or as an intermediate sanction in lieu of return to prison, that an inmate or parolee agree in writing to the use of electronic monitoring or supervising devices for the purpose of helping to verify his or her compliance with all other conditions of parole. The devices shall not be used to eavesdrop or record any conversation, except a conversation between the parolee and the agent supervising the parolee which is to be used solely for the purposes of voice identification. *(Added by Stats.1991, c. 215 (A.B.2103), § 1.)*

Former § 3004 was repealed by Stats.1944, 3rd Ex.Sess., c. 2, § 45.

§§ 3005, 3006. Repealed by Stats.1944, 3rd Ex.Sess., c. 2, § 45

ARTICLE 2. DETERMINING AND RE-
DETERMINING TERM OF IMPRIS-
ONMENT [REPEALED]

§§ 3020 to 3023. Repealed by Stats.1977, c. 165, § 43

§ 3024. Repealed by Stats.1976, c. 1139, § 279

§§ 3024.5, 3025. Repealed by Stats.1977, c. 165, § 43

Prior to repeal, § 3025 was amended by Stats.1976, c. 1139, § 280; Stats.1977, c. 2, § 6.

ARTICLE 3. PAROLES

Section
3040.    Power to parole; outside prisons; camps.
3041.    Parole release date; setting; criteria; review.
3041.1    Governor's request to review parole decision; majority vote in favor of parole.
3041.2.    Boatwright-Eaves Parole Review Act of 1988.
3041.5.    Hearings; rights of prisoners; written statements by board of disposition; rehearings.
3041.7.    Parole release dates; prisoners under life sentence: hearings to set, postpone or rescind; counsel; prosecutor.
3042.    Hearings to review parole; prisoners sentenced to life sentences; notice; transcripts; time for release; statement of findings and reasons.
3043.    Parole eligibility or date; notice to victim or next of kin; request; appearance and statement; duty of board; amendment of section.
3043.1.    Appearance of next of kin or immediate family member; entitlement to attendance of person of own choosing.
3043.2.    Written, audiotaped or videotaped statement in lieu of personal appearance.
3043.3.    Immediate family, defined.
3043.5.    Condit-Nolan Public Participation in Parole Act of 1984.
3044.    Repealed.
3045.    Minimum imprisonment; offense pardoned on grounds of innocence not counted as previous conviction.
3046.    Persons imprisoned under life sentence; minimum term; consideration of statements and recommendations; order.
3047 to 3048.5.    Repealed.
3049.    Minimum imprisonment for sentence prior to July 1, 1977; other cases.
3049.5.    Prisoners included in specific research program approved by board of corrections.
3050.    Repealed.

SB 42
Nejedly & Way                      -3-                September 15, 1976

conditions of parole.  Although the Department of Corrections
opposed limiting parole to one year for most offenses, law enforce-
ment, including Ray Procunier, accepted this limitation for several
reasons.  First, over 70% of all parole violations occur in the
first year; second, over 80% of all parole violations are detected
by the police, not the parole officer, and could be the basis for
an independent criminal prosecution; lastly, limiting most parole's
to one year could result (if the number of parole offenses remains
the same) in much closer supervision during the critical first year.

The claim of a few people that S.B. 42 will result in the release
of large numbers of dangerous convicts is unfounded.  This claim
is based on the requirement that the Community Release Board
"retroactively" apply terms prescribed by S.B. 42 for all inmates
sentenced under prior law.  However, S.B. 42 does not require that
an S.B. 42 sentence be applied.  Indeed, section 1170.2(b), at
page 128 of the bill, authorizes the Community Release Board to
impose a longer term and retain an inmate where a majority of the
Community Release Board "determine that due to the number of crimes
the prisoner was convicted of, or due to the number of prior
convictions ...., or due to the fact that the prisoner was armed
with a deadly weapon when the crime was committed, or used a deadly
weapon ..., or inflicted or attempted to inflict great bodily in-
jury..."  The only type of potentially dangerous prisoners that
might be released are those who are mentally disordered.  Ray
Brown and Jerry Lachner have met to discuss methods of dealing with
this problem under the LPS Act.  (If necessary, they will prepare
a clean-up bill which Senator Nejedly will introduce in January
as an urgency measure.)

If you sign this bill, as I strongly recommend, California will be
the first major state to move decisively toward determinate sen-
tencing.  Among all the states, only Maine has already enacted a
law repealing indeterminate sentencing.  Illinois and Minnesota
are in the process of doing so.  All of the major states have in-
determinate sentence laws.  Only a few of the smaller states have
partial determinate sentencing laws, but nothing on the magnitude
of S.B. 42.


Attachment

JAK:er

September 3, 1976

HIGHLIGHTS

of

SENATE BILL 42

SENTENCING

SB-42 generally replaces the indeterminate sentence with a determinate sentence imposed by the trial court at the time of sentencing. The exceptions are capital crimes and those offenses having straight life sentences, with or without the possibility of parole, i.e., first degree murder, kidnapping for robbery or ransom. The bill establishes a narrow range of three specific time periods for those other crimes, all of which will become determinate. The sentence ranges are 16 months, 2, or 3 years; 2, 3, or 4 years; 3, 4, or 5 years; and 5, 6, or 7 years. The sentencing judge is required to choose the middle sentence in the absence of a motion and supporting evidence in mitigation or aggravation of the crime. All felony sentence decisions must be supported by a statement of reasons on the record by the sentencing judge.

Note:  § 1170.

ENHANCEMENTS

PRIOR PRISON TERMS

Senate Bill 42 provides for an additional term of one year for each prior prison term (three years for violent felony priors). However, if there are sufficient circumstances in mitigation, the trial court may strike the additional punishment, provided reasons are stated for the record. A five-year wash-out is provided for most priors (ten years for violent felony priors).

Note:  P.C. § 667.5.

CONSECUTIVE SENTENCES

Senate Bill 42 provides an additional sentence of one-third the middle term of the crime for which the consecutive sentence is imposed.

Note:  P.C. § 1170.1a(b).

LIMITATIONS

The enhancements for both prior terms (not including the three year priors) and consecutive sentences shall not exceed five years.  P.C. 1170.1a(e).  Except for the most serious felonies specified in P.C. § 667.5(c), or for felonies involving arming, use of a firearm, or great bodily injury, the term of imprisonment shall not exceed twice the base term imposed by the trial court.  Note P.C. 1170.1a(f).

## ARMING, USE OF A FIREARM, GREAT BODILY INJURY, OR EXCESSIVE TAKING

Enhancements of 1, 2, or 3 years, or a percentage of the base term are prescribed for arming, use, G.B.I., or excessive taking, respectively. In no instance can these enhancements be added where they are an element of the crime. No more than one enhancement can apply to the sentence for any single offense. The court may strike the additional punishment if there are sufficient circumstances in mitigation but reasons must be stated for the record.

    Note: P.C. § 12022, 12022.5, 12022.6, 12022.7, 1170.1a(d).

## GOOD TIME

SB-42 has a good time provision for reduction of the court ordered sentence. The total possible good time credit that may by granted is four months for each eight months served in prison. One of the four months is for participation in programs. The remaining three months are for refraining from assault with a weapon, escape, assault, possession of a weapon, possession of a controlled substance, attempt to escape, urging others to riot if violence results, destruction of state property, falsification of documents, possession of escape tools and the manufacture or sale of intoxicants. Depending on the offense, either 45, 30, or 15 days good time credit can be lost. Extensive procedural guidelines are established.

    Note: P.C. § 2930

## PAROLE

The parole period for all inmates receiving a determinate sentence shall run no longer than one year, and no longer than three years for those inmates remaining indeterminately sentenced. The parole period runs continuously, except for a parolee who absconds.

    Note: P.C. § 3000

## PAROLE REVOCATION

The maximum return for a technical violation in the absence of a new conviction is for six months, but in no case to extend beyond the total parole period specified in the bill.

    Note: P.C. § 3057.

## JUDICIAL COUNCIL

The Judicial Council has a number of duties, including the adoption of rules to promote uniformity in sentencing by providing criteria for the consideration of the trial judge, and monitoring that uniformity by acquiring and distributing statewide sentencing data every three months.

    Note: P.C. s 1170.3, 1170.4.

- 3 -

COMMUNITY RELEASE BOARD

    The Community Release Board will consist of two members from the Adult Authority and two members from the Women's Board of Terms and Paroles, and five other members appointed by the Governor. The duties of the C.R.B. shall include reviewing prisoners' request for reconsideration of denial of good time, determining questions of parole revocation, setting terms for inmates remaining indeterminately sentenced, and applying the retroactive provisions of the bill.
    Nota:  P.C. § 5075.

RETROACTIVITY

    The retroactive provisions of the bill will fix determinate sentences for those inmates currently incarcerated who would have received a determinate sentence if they had been sentenced after the effective date of the bill. The C.R.B. is obliged to determine what the length of imprisonment would have been under § 1170 without consideration of good time credit. The C.R.B. shall choose the middle term of the longest commitment offense, enhanced by any court imposed aggravations, using the terms set in the bill. A special provision allows the C.R.B., upon a majority decision, to set a higher term because of factors such as number of crimes convicted of, number of prior convictions, arming or use of a deadly weapon, infliction or attempted infliction of great bodily harm. In this event, the inmate shall be entitled to a hearing, with representation by legal counsel. In no instance can an inmate be required to serve a term longer than a parole date previously set by the Adult Authority, or longer than he could have served under the indeterminate sentence law.
    The good time provisions are not retroactive. Those inmates currently incarcerated would retain their present parole eligibility and will be eligible to receive good time credit for the period of incarceration remaining after the effective date of the act.
    All parole provisions in the bill will be retroactive.
    Note:  P.C. § 1170.2.

EFFECTIVE DATE

    Senate Bill 42 will become effective on July 1, 1977. The California Department of Corrections will have a ninety day grace period after the effective date of the bill in which to make an orderly transition to SB-42's determinate sentencing provisions.

182

BENEFITS OF SB 42, AS AMENDED APRIL 22, 1976
IN COMPARISON WITH CURRENT LAW

1.  In accord with the almost total lack of belief in or
proof of the validity of any kinds of predictors either as
to the causes of crimes or the cure of offenders, SB 42
explicitly places personal responsibility on offenders and
recognizes that prison is punishment for the act, thus
completely changing the emphasis of the system from a
sick-treatment-medical model. /‾1170(a))1)·P.126.
Also proposed amendments.‾7

2.  Places length of prison sentence within narrow limits
in hands of people's representatives (the legislature) for
almost all crimes, a change from current unlimited sentencing
discretion of executive appointees.  /‾1170(a)(2);
1168: Pp. 125-126.‾7  (But small number of punishment categories
and interrelationship of offenses in those categories makes it
difficult to logically change any one crime's punishment as a
result of an immediate emotional reaction without considering
the effect on the whole.)

3.  Logically orders prison time in increasing amounts
proportionate to the increasing injury of the crime to the
victim or public interest, a complete change from the current
disparity inherent in a system based on treatment rather than
punishment.  /‾1170(a) (1): P.126‾7

---

*Keyed to P.C. Section and page of April 22 Amended version.

183

2

4.  Makes crime, for those left indeterminate, rather than
"prediction of behavior" criteria for parole date setting
~~with Judicial Council guidelines~~.  /‾3041:P.144‾/

5.  Legislatively fixed range of sentences <u>eliminates</u>
<u>disparity</u> in prison sentences for same crimes currently due
to changing political, social and economic <u>influences</u> on
appointed parole board system with unlimited sentencing
discretion.  /‾1170(a)(1):P.126‾/

6.  <u>Removes</u> <u>disparity</u> in prison sentences for same crimes
currently due to use of <u>invalid</u> <u>behavior</u> <u>science</u> <u>predictors</u>
presently legally required under current indeterminate
rehabilitation system.  /‾1170(a)(1):P.126‾/

7.  <u>Avoids</u> <u>disparity</u> in prison sentences for same crimes
currently due to <u>conscious</u> <u>or</u> <u>unconscious</u> <u>influences</u> <u>of</u>
<u>personal</u> <u>biases</u> of parole board members under a system which
provides unparallelled discretion in sentencing.  /‾1170(a)(1):
P.126‾/

8.  <u>Retains</u> <u>flexibility</u> in sentences due to specifics of the
particular incident and offender but only within very <u>narrow</u>
<u>bounds</u> rather than the unlimited possibilities for abuse of
current system.  /‾1170(b):P.127‾/

184

3

9.  Requires for the first time a body to provide criteria
to trial judges for their guidance in selecting sentences even
within the strictures of the Act.  /1170(a)(2); 1170.3:
Pp. 126 & 135.  Also proposed amendments./

10.  Requires, for the first time, a body to provide periodic
statewide and national sentencing data to trial judges as an
additional guide to their sentencing choices as an additional
impetus for uniformity in sentencing.  /1170.4:P.135.  Also
proposed amendments./

11.  Requires trial judges for the first time to state reasons
on the public record for selection of probation or the specific
prison sentence within the narrow confines required.  /1170(b);
1170.1:Pp.127/

12.  For the first time, provides notice to the public of the
actual prison time to be served for each crime, to law
enforcement a knowledgeable basis for charging and plea
bargaining, to the offender and defense the real benefits
or not of any plea bargain offered, and to the offender and
his family and friends and all others interested (victim)
the actual time he will serve in prison less good time
immediately upon the completion of sentencing; a complete
change from the current unknown quantity inherent in
indeterminancy until parole is granted.  /1168;1170(b):
Pp.125 & 127./

185

4

13.  Logically provides additional prison time for <u>prior</u>
<u>prison terms</u> rather than present illogic of law pertaining to
prior convictions.  /667.5:P.123/

14.  Provides for wash-out regarding prior prison terms -
5 years for most; 10 years for eight most serious crimes
(may be only state with such provision).  /667.5:P.123.  Also
proposed amendments./

15.  <u>Simplifies</u> by <u>consolidation</u> and makes time <u>certain</u> and
<u>proportionate</u> when ordered for multiple and conflicting
penalty provisions for consecutives and enhancements of
arming and use.  /1170.1a;12022;12022.5:P.128,160-1./

16.  Adds a <u>great bodily injury</u> enhancement possibility
whenever the element is present in the circumstances of any
crime rather than as an element of only selected crimes as present.
/12022.7:P.162./

17.  Adds two <u>great societal injury</u> enhancement possibilities
where deprivation of property or damage to the public as defined
in existing criminal offenses are present in amounts in excess
of $100,000 or $500,000.  /12022.6:P.162./

18.  Abolishes habitual offender sections and replaces with a
list of most serious crimes requiring that defendant must be

186

Case 5:24-cv-00721-FLA-MAA Document 1 Filed 04/05/24 Page 82 of 105 Page ID #:82

5

convicted of one such crime in order to be sentenced with
special prior term enhancements for having had such prior
terms as well. /667.5:P.123. Also proposed amendments./

19. Provides greater incentive for good behavior in prison by
certain time reductions for refraining from special overt acts.
/2931/

20. Provides continued external incentive for program involvement
by tying small part of time reduction to participation only, not
anyone's judgment of success. /2931(c):P.138./

21. Sets up specific statutory safeguards against abuse in good
time denial and remaining parole release, postponement or
recision hearings exceeding any current court requirements.
For example: Complete discovery of prisoner's central file by
prisoner (exceeds OLSEN, eliminates "unnamed source" information).
Provides for legal counsel at parole hearing if date is
rescinded or set 3 years beyond minimum eligible parole date.
(Injects attorneys into correctional system.)

22. Limits parole periods to short times consistent with current
studies. Limits imprisonment for technical parole revocation to
short periods rather than current discharge date which can be
relatively distant and imposed without the due process of a
new conviction. 1 year determinately sentenced; 3 years

DOCKET NO: _____

---

# IN THE
# SUPREME COURT OF THE
# STATE OF CALIFORNIA

---

BRUCE KOKLICH & LAWRENCE REMSEN,

Plaintiffs, et al.

- Against -

KATHLEEN ALLISON, Secretary, California
Department of Corrections & Rehabilita-
tion; JENNIFER SHAFFER, Exec. Officer of
the State's Parole Agency; ROB BONTA, as
State Attorney General; GAVIN C. NEWSOM,
Governor of California


Defendants, et al.

---

## COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

---

### PURSUANT TO:

Cal. Civ. C. §§ 52.1 & 52.3; CCP §§ 36; 525
thru 527; & 1060; Pen. Code & 1473; Gov. C.
§ 11350, et seq.

---

BRUCE KOKLICH &
LAWRENCE REMSEN
CIM Alpha - Seven
P.O. Box - 3100
Chino, CA  91708

# TABLE OF CONTENTS

| | | Pg. No. |
|---|---|---|
| | TABLE OF CONTENTS | i |
| | TABLE OF AUTHORITIES | ii, iii & IV |
| I. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF | 1 |
| II. | NATURE OF THE ACTION | 2 |
| III. | JURISDICTION AND VENUE FOR DECLARATORY AND INJUNCTIV RRELIEF | 2 |
| IV. | STATEMENT OF FACIAL FACTS | 5 |
| | FACUTALLY SUPPORTED SENTENCING DEFINITIONS | 7 |
| VI. | REASONS FOR DECLARATORY AND INJUNCTIVE RELIEF | 8 |
| A. | (COUNT I. - VIOLATION OF Code Civ. Proc. § 3281) PROP. 7 WAS DRAFTED AND PASSED IN COMPLETE LACK OF JURISDICTION AS THE INITIATIVE WAS INTENDED TO DEFEAT THE DISTINCT LEGISLATIVE PURPOSE AND POLICY OF THE REPEAL OF THE ISL USING SUBTERFUGE, INDIRECTION AND EVASION. | 8 |
| B | (COUNT II - Civ. Code § 3281 & Conspiracy under 28 U.S.C. § 1985(3)) Both SB 42/AB/476 AND PROP. & MANDATED PEN. CODE § 2931 GOOD TIME CREDITS ON CATEGORY FOUR AND BELOW SENTENCES | 11 |
| C. | (COUNT III. - Violation of Cal. Const. Art. 1 § 9 & Civ. Code. 1623) THE CALIFORNIA CONSTITUTION AND MULTIPLE STATE AND FEDERAL AUTHORITIES PROHIBITING IMPARING THE OBLIGATION OF CONTRACTS | 12 |
| D. | (COUNT IV. - Grounds for Declaratory Relief under Gov. Code § 11350) ONGOING REQUEST FOR JURY TRIAL TO PROVE DEFENDANTS TOTAL LACK OF SUBJECT MATTER JURISDICTION OVER PAROLE AGENCY HEARINGS | 15 |
| E. | (COUNT V. Acting Without Jurisdiction - 28 U.S.C. § 1343(3)) THE PAROLE AGENCY IS ACTING WITHOUT JURISDICTION IN BLATANT DISREGARD TO THIS COURTS OWN PRECEDENT | 17 |
| VI | AN ESTEEMED CSC JUSTICE HAS CONFIRMED THE FACT THAT THE ISL WAS NEVER REENACTED. | 18 |
| VII. | CONCLUSION | 19 |
| IX. | PRAYER FOR RELIEF | 22 |
| | VERIFICATION | 23 |

ADOPTED
APR 19 1977
JAMES D. DRISCOLL
CHIEF CLERK

APR 18 1977

Reg. #7788
Substantive

AMENDMENTS TO ASSEMBLY BILL NO. 476

AS AMENDED IN ASSEMBLY APRIL 12, 1977

AMENDMENT 1

In line 11 of the title of the printed bill,
as amended in Assembly April 12, 1977, strike out "and
12022.7" and insert:

12022.6 and 12022.7

AMENDMENT 2

In line 21 of the title, strike out "Code,"
and insert:

Code, and to amend Section 11483 of the Welfare and
Institutions Code,

AMENDMENT 3

On page 12, strike out lines 12 to 15, inclusive,
and insert:

this subdivision for any prison term served prior to a
period of 10 years in which defendant remained free of
both prison custody and the commission of an offense which
results in a felony conviction.

AMENDED IN ASSEMBLY APRIL 12, 1977

AMENDED IN ASSEMBLY MARCH 17, 1977

CALIFORNIA LEGISLATURE—1977-78 REGULAR SESSION

ASSEMBLY BILL                              No. 476

Introduced by Assemblyman Boatwright
(Principal coauthor: Assemblyman Nestande) *(Principal
coauthors: Assemblyman Nestande and Senator Beverly)
Assemblymen Chacon, Chimbole, Cordova, Fazio,
Gualco, Imbrecht, Lanterman, McVittie, Suitt, Vincent
Thomas, William Thomas, Thurman, and Tucker
(Coauthors: Senators Rains and Nimmo)*

February 10, 1977

An act to amend Sections 11555 and 11556 of, and to repeal
Section 11563.5 of, the Government Code, and to amend
Sections 148.1, 270, 480, 502.7, *213, 480,* 594, 597.5, 653h, 654,
664, 667.5, 969c, 969d, 1168, 1170, 1170.2, 1170.4, 1191, 1203,
1203.03, 1203.06, *1213.5,* 1389.7, 2081.5, 2400, 2401, 2401.5, 2402,
2403, 2651, 2684, 2772, 2790, 2911, 2930, 2931, 2932, 3000, 3040,
3041, 3041.5, 3041.7, 3042, 3046, 3052, 3053, 3053.5, 3057, 3059,
3060, 3062, 3084, 4532, 4801, 4802, 4803, 4810, 4812, 4813, 4814,
4850, 4851, 4852.14, 4852.18, 5000, 5001, 5002, 5003.5, 5011, 5055,
5068, 5076.1, 5076.2, 5082, 5089, 6053, 6081, 11193, 11194, 12022,
12022.5, 12022.6, 12022.7, 12100; and 18560 *and 12022.7* of, to
amend and renumber Sections 1170.1 and *Section* 1170.1a of,
to add Article 3 (commencing with Section 2947) to Chapter
7 of Title 1 of Part 3 of, to repeal Sections *1170.1, 1170.1b,*
1389.3, 2399, 3043, 3044, 3050, 3054, and 3055 of, and to repeal
Article 2 (commencing with Section 2920) of Chapter 7 of
Title 1 of Part 3, Article 3 (commencing with Section 2940) of
Chapter 7 of Title 1 of Part 3, Article 2 (commencing with
Section 3020) of Chapter 8 of Title 1 of Part 3, and Article 4
(commencing with 3100) of Chapter 8 of Title 1 of Part 3, of

AB 476                    — 2 —                                        — 3 —                    A

the Penal Code, relating to imprisonment, and declaring the urgency thereof to take effect immediately:

### LEGISLATIVE COUNSEL'S DIGEST

AB 476, as amended, Boatwright. Imprisonment.

The Uniform Determinate Sentencing Act of 1976, generally, provides a system whereby the judge selects a term of imprisonment in the state prison from 3 statutory choices, with the Community Release Board administering provisions relating to good-time credit and parole.

This bill would make various conforming, corrective, and substantive changes in such act and related provisions of law.

The bill would take effect immediately as an urgency statute, to become operative July 1, 1977.

Vote: ⅔. Appropriation: no. Fiscal committee: yes. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1  SECTION 1. Section 11555 of the Government Code is
2  amended to read:
3  11555. An annual salary of twenty-six thousand two
4  hundred fifty dollars ($26,250) shall be paid to the
5  following:
6  (a) Chairman of the Community Release Board
7  (b) Chairman of the Board of Equalization
8  (c) Chairman of the State Water Resources Control
9  Board
10  (d) Chairman of the Youth Authority Board.
11  SEC. 2. Section 11556 of the Government Code is
12  amended to read:
13  11556. An annual salary of twenty-five thousand dollars
14  ($25,000) shall be paid to each of the following:
15  (a) Director of Navigation and Ocean Development
16  (b) Director, Office of Emergency Services
17  (c) Members of the Community Release Board
18  (d) Members of the Board of Equalization
19  (e) Members of the State Water Resources Control
20  Board
21  (f) Members of the Youth Authority Board

1  (g) State Fire Marshal
2  SEC. 3. Section 11563.5 of the Government Code
3  repealed.
4  SEC. 4. Section 148.1 of the Penal Code is amended
5  read:
6  148.1. (a) Any person who reports to any police offi
7  sheriff, employee of a fire department or fire serv
8  district attorney, newspaper, radio station, televi
9  station, deputy sheriff, deputy district attorney, mem
10  of the California Highway Patrol, employees of
11  Department of Justice, employees of an airli
12  employees of an airport, employees of a railroad
13  busline, an employee of a telephone company, occupa
14  of a building or a news reporter in the employ o.
15  newspaper or radio or television station, that a bomb
16  other explosive has been or will be placed or secreted
17  any public or private place knowing that such report
18  false, is guilty of a crime punishable by imprisonment
19  the state prison, or imprisonment in the county jail not
20  exceed one year.
21  (b) Any person who maliciously informs any oth
22  person that a bomb or other explosive has been or will b
23  placed or secreted in any public or private place
24  knowing that such information is false, is guilty of a crim
25  punishable by imprisonment in the state prison, o
26  imprisonment in the county jail not to exceed one yea
27  (c) Any person who maliciously gives, mails, sends, o
28  causes to be sent any false or facsimile bomb to anothe
29  person, or places or causes to be placed any false o
30  facsimile bomb, with the intent that any other persor
31  thinks it is a real bomb and with knowledge that it is a
32  false or facsimile bomb, is guilty of a crime punishable by
33  imprisonment in the state prison, or imprisonment in the
34  county jail not to exceed one year.
35  ~~SEC. 5. Section 270 of the Penal Code is amended to~~
36  ~~read:~~
37  ~~270. If a parent of a minor child willfully omits, without~~
38  ~~lawful excuse, to furnish necessary clothing, food, shelter~~
39  ~~or medical attendance, or other remedial care for his or~~
40  ~~her child, he or she is guilty of a misdemeanor punishable~~

1 Institution for Women, the court in imposing the
2 sentence shall not fix the term or duration of the period
3 of imprisonment.
4 969c. Whenever a defendant uses a weapon under such
5 circumstances as to bring such defendant within the
6 operation of Section 12022 the fact that the defendant so
7 used a weapon may be charged in the accusatory
8 pleading. This charge, if made, shall be added to and be
9 a part of the count or each of the counts of the accusatory
10 pleading which charge the offense at the time of the
11 commission of which the defendant used a weapon. That
12 portion of any count which charges that the defendant
13 used a weapon shall be sufficient if it can be understood
14 therefrom that at the time of his commission of the
15 offense set forth in the count, the defendant used a
16 weapon. The nature of the weapon must be set forth. One
17 such charge may name more than one weapon. If the
18 defendant pleads not guilty of the offense charged in any
19 count which alleges that the defendant used a weapon,
20 the question whether or not he used a weapon as alleged
21 must be tried by the court or jury which tries the issue
22 upon the plea of not guilty. If the defendant pleads guilty
23 of the offense charge the question whether or not he used
24 a weapon as alleged must be determined by the court
25 before pronouncing judgment.
26 SEC. 13.5. Section 969d of the Penal Code is amended
27 to read:
28 969d. Whenever a defendant used or was armed with
29 a firearm as recited in Section 12022.5, the fact that the
30 defendant used or was armed with a firearm may be
31 charged in the accusatory pleading. This charge, if made,
32 shall be added to and be a part of the count or each of the
33 counts of the accusatory pleading which charged the
34 offense. That portion of any count which charges that the
35 defendant used or was armed with a firearm shall be
36 sufficient if it can be understood therefrom that at the
37 time of his commission of the offense set forth in the
38 count the defendant used or was armed with a firearm.
39 The nature of the firearm must be set forth. One such
40 charge may name more than one firearm. If the

1 defendant pleads not guilty to the offense charged in
2 count which, alleges, that the defendant used or
3 armed with a firearm, the question whether or not
4 used or was armed with a firearm as alleged must
5 determined by the court before pronouncing judgme
6 SEC. 14. Section 1168 of the Penal Code is amended
7 read:
8 1168. (a) Every person who commits a public offen.
9 for which any specification of three time periods
10 imprisonment in any state prison is now prescribed i
11 law shall, unless such convicted person be placed
12 probation, a new trial granted, or the imposing
13 sentence suspended, be sentenced pursuant to Chapte
14 4.5 (commencing with Section 1170) of Title 7 of Part .
15 (b) For any person not sentenced under suc.
16 provision, but who is sentenced to be imprisoned in th.
17 state prison, including imprisonment not exceeding on
18 year and one day, the court imposing the sentence shal
19 not fix the term or duration of the period o
20 imprisonment.
21 SEC. 15. Section 1170 of the Penal Code is amended to
22 read:
23 1170. (a) (1) The Legislature finds and declares that
24 the purpose of imprisonment in state prison for crime is
25 punishment. This purpose is best served by terms
26 proportionate to the seriousness of the offense wi*
27 provision for uniformity in the sentences of offende
28 committing the same offense under similar
29 circumstances. The Legislature further finds and declares
30 that the elimination of disparity and the provision of
31 uniformity of sentences can best be achieved by
32 determinate sentences fixed by statute in proportion to
33 the seriousness of the offense as determined by the
34 Legislature to be imposed by the court with specified
35 discretion. *This declaration applies to persons sentenced*
36 *under this section or Section 1168.*
37 (2) In any case in which the punishment prescribed by
38 statute for a person convicted of a public offense is a term
39 of imprisonment in the state prison of 16 months, two or
40 three years; two, three or four years; three, four or five




AB 476                    — 20 —                                        — 21 —                    AB 476

1 ~~of the sentence he may be on parole for a period as~~
2 ~~provided in Section 3000.~~
3    *(b) When a judgment of imprisonment is to be*
4 *imposed and the statute specifies three possible terms,*
5 *the court shall order imposition of the middle term,*
6 *unless there are circumstances in aggravation or*
7 *mitigation of the crime. Upon denial of probation, either*
8 *party may move that the upper or lower term be imposed*
9 *by the court. The motion shall specify the circumstances*
10 *which justify imposition of the upper or lower term.*
11 *Imposition of the upper or lower term shall be based on*
12 *the circumstances alleged. Either party may request a*
13 *hearing to prove or rebut the circumstances alleged. In*
14 *determining whether there are circumstances that justify*
15 *imposition of the upper or lower term, the court may*
16 *consider the motion, the record in the case, the probation*
17 *officer's report, other reports including reports received*
18 *pursuant to Section 1203.03 and presentence reports*
19 *submitted by the prosecution or the defendant, the*
20 *sentencing rules of the Judicial Council, and any*
21 *evidence introduced at the sentencing hearing. The*
22 *court shall set forth on the record the facts and reasons*
23 *for imposing the upper or lower term. The court may not*
24 *impose an upper term by using the same fact used to*
25 *enhance the sentence under Section 667.5, 1170.1, 12022,*
26 *2022.5, 12022.6, or 12022.7. A term of imprisonment shall*
*e specified in every case unless imposition of sentence*
*s suspended.*
   *(c) The court shall state the reasons for its sentence*
*choice on the record at the time of sentencing. The court*
*shall also inform the defendant that as part of the*
*sentence after expiration of the term he may be on parole*
*for a period as provided in Section 3000.*
   *(d) When a defendant subject to this section or*
*subdivision (b) of Section 1168 has been sentenced to be*
*imprisoned in the state prison and has been committed*
*to the custody of the Director of Corrections, the court*
*may, within 120 days of the date of commitment on its*
*own motion, or at any time upon the recommendation of*
*the Director of Corrections or the Community Release*

1 *Board, recall the sentence and commitment previously*
2 *ordered and resentence the defendant in the same*
3 *manner as if he had not previously been sentenced,*
4 *provided the new sentence, if any, is no greater than the*
5 *initial sentence. The resentence under this subdivision*
6 *shall apply the sentencing rules of the Judicial Council so*
7 *as to eliminate disparity of sentences and to promote*
8 *uniformity of sentencing. Credit shall be given for time*
9 *served.*
10    *(e) Any sentence imposed under this article shall be*
11 *subject to the provisions of Sections 3000 and 3057 and*
12 *any other applicable provisions of law.*
13    *(f) In all cases the Community Release Board shall, not*
14 *later than one year after the commencement of the term*
15 *of imprisonment, review the sentence and shall by*
16 *motion recommend that the court recall the sentence*
17 *and commitment previously ordered and resentence the*
18 *defendant in the same manner as if he had not been*
19 *previously sentenced if the board determines that the*
20 *sentence is disparate. The review under this section shall*
21 *apply the sentencing rules of the Judicial Council and the*
22 *information regarding the sentences in this state of other*
23 *persons convicted of similar crimes so as to eliminate*
24 *disparity of sentences and to promote uniformity of*
25 *sentencing.*
26    SEC. 16. Section 1170.1 of the Penal Code is repealed.
27 ~~1170.1. The trial judge shall state the reasons for his~~
28 ~~sentence choice on the record at the time of sentencing.~~
29 ~~The trial judge shall also inform the defendant that after~~
30 ~~the expiration of his sentence he shall be on parole for a~~
31 ~~period of up to one year unless for good cause parole is~~
32 ~~waived as provided in Section 3000.~~
33 SEC. 17. Section 1170.1a of the Penal Code is amended
34 and renumbered to read:
35    1170.1. (a) Except as provided in subdivisions (b) and
36 (c) and subject to Section 654, when any person is
37 convicted of two or more felonies, whether in the same
38 proceeding or court or in different proceedings or courts,
39 and whether by judgment rendered by the same or by a
40 different court, and the






# 7 Murder. Penalty—Initiative Statute

## Official Title and Summary Prepared by the Attorney General

MURDER. PENALTY. INITIATIVE STATUTE. Changes and expands categories of first degree murder for which penalties of death or confinement without possibility of parole may be imposed. Changes minimum sentence for first degree murder from life to 25 years to life. Increases penalty for second degree murder. Prohibits parole of convicted murderers before service of 25 or 15 year terms, subject to good-time credit. During punishment stage of cases in which death penalty is authorized: permits consideration of all felony convictions of defendant; requires court to impanel new jury if first jury is unable to reach a unanimous verdict on punishment. Financial impact: Indeterminable future increase in state costs.

## Analysis by Legislative Analyst

### Background:

Under existing law, a person convicted of *first degree murder* can be punished in one of three ways: (1) by death, (2) by a sentence of life in prison without the possibility of parole, or (3) by a life sentence with the possibility of parole, in which case the individual would become eligible for parole after serving seven years. A person convicted of *second degree murder* can be sentenced to 5, 6, or 7 years in prison. Up to one-third of a prison sentence may be reduced through good behavior. Thus, a person sentenced to 6 years in prison may be eligible for parole after serving 4 years.

Generally speaking, the law requires a sentence of death *or* life without the possibility of parole when an individual is convicted of first degree murder under one or more of the following special circumstances: (1) the murderer was hired to commit the murder; (2) the murder was committed with explosive devices; (3) the murder involved the killing of a specified peace officer or witness; (4) the murder was committed during the commission or attempted commission of a robbery, kidnapping, forceable rape, a lewd or lascivious act with a child, or first degree burglary; (5) the murder involved the torture of the victim; or (6) the murderer has been convicted of more than one offense of murder in the first or second degree. If any of these special circumstances is found to exist, the judge or jury must "take into account and be guided by" aggravating or mitigating factors in sentencing the convicted person to either death or life in prison without the possibility of parole. ("Aggravating" factors which might warrant a death sentence include brutal treatment of the murder victim. "Mitigating" factors, which might warrant life imprisonment, include extreme mental or emotional disturbance when the murder occurred.

### Proposal:

This proposition would: (1) increase the penalties for first and second degree murder, (2) expand the list of special circumstances requiring a sentence of either death or life imprisonment without the possibility of parole, and (3) revise existing law relating to mitigating or aggravating circumstances.

The measure provides that individuals convicted of first degree murder and sentenced to life imprison-

ment shall serve a minimum of 25 years, less whatever credit for good behavior they have earned, before they can be eligible for parole. Accordingly, anyone sentenced to life imprisonment would have to serve at least 16 years and eight months. The penalty for second degree murder would be increased to 15 years to life imprisonment. A person sentenced to 15 years would have to serve at least 10 years before becoming eligible for parole.

The proposition would also expand and modify the list of special circumstances which require either the death penalty or life without the possibility of parole. As revised by the measure, the list of special circumstances would, generally speaking, include the following: (1) murder for any financial gain; (2) murder involving concealed explosives or explosives that are mailed or delivered; (3) murder committed for purposes of preventing arrest or aiding escape from custody; (4) murder of any peace officer, federal law enforcement officer, fireman, witness, prosecutor, judge, or elected or appointed official with respect to the performance of such person's duties; (5) murder involving particularly heinous, atrocious, or cruel actions; (6) killing a victim while lying in wait; (7) murder committed during or while fleeing from the commission or attempted commission of robbery, kidnapping, specified sex crimes (including those sex crimes that now represent "special circumstances"), burglary, arson, and trainwrecking; (8) murder in which the victim is tortured or poisoned; (9) murder based on the victim's race, religion, nationality, or country of origin; or (10) the murderer has been convicted of more than one offense of murder in the first or second degree.

Also, this proposition would specifically make persons involved in the crime other than the actual murderer subject to the death penalty or life imprisonment without possibility of parole under specified circumstances.

Finally, the proposition would make the death sentence *mandatory* if the judge or jury determines that the aggravating circumstances surrounding the crime *outweigh* the mitigating circumstances. If aggravating circumstances are found *not* to outweigh mitigating circumstances, the proposition would require a life sentence without the possibility of parole. Prior to weighing the aggravating and mitigating factors, the jury

See: Pgs. 44 & 45, infra.

would have to be informed that life without the possibility of parole might at a later date be subject to commutation or modification, thereby allowing parole.

Fiscal Effect:

We estimate that, over time, this measure would increase the number of persons in California prisons, and thereby increase the cost to the state of operating the prison system.

The increase in the prison population would result from:

- the longer prison sentences required for first degree murder (a minimum period of imprisonment equal to 16 years, eight months, rather than seven years);
- the longer prison sentences required for second degree murder (a minimum of ten years, rather than four years); and

• an increase in the number of persons sentenced to life without the possibility of parole.

There could also be an increase in the number of executions as a result of this proposition, offsetting part of the increase in the prison population. However, the number of persons executed as a result of this measure would be significantly less than the number required to serve longer terms.

The Department of Corrections states that a small number of inmates can be added to the prison system at a cost of $2,575 per inmate per year. The additional costs resulting from this measure would not begin until 1983. This is because the longer terms would only apply to crimes committed after the proposition became effective, and it would be four years before any person served the minimum period of imprisonment required of second degree murderers under existing law.

---

## Text of Proposed Law

This initiative measure proposes to repeal and add sections of the Penal Code; therefore, existing provisions proposed to be deleted are printed in strikeout type and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

Section 1.   Section 190 of the Penal Code is repealed.

190.   Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in state prison for life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5. Every person guilty of murder in the second degree is punishable by imprisonment in the state prison for five, six, or seven years.

Sec. 2.   Section 190 is added to the Penal Code, to read:

*190.   Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5.*

*Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life.*

*The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time.*

Sec. 3.   Section 190.1 of the Penal Code is repealed.

190.1.   A case in which the death penalty may be imposed pursuant to this chapter shall be tried in separate phases as follows:

(a)   The defendant's guilt shall first be determined. If the trier of fact finds the defendant guilty of first degree murder, it shall at the same time determine the truth of all special circumstances charged as enumerated in Section 190.2, except for a special circumstance charged pursuant to paragraph (5) of subdivision (c) of Section 190.2 where it is alleged that the defendant had been convicted in a prior proceeding of the offense of murder of the first or second degree.

(b)   If the defendant is found guilty of first degree murder and one of the special circumstances is charged pursuant to paragraph (5) of subdivision (c) of Section 190.2 which charges that the defendant had been convicted in a prior proceeding of the offense of murder of the first or second degree, there shall thereupon be further proceedings on the question of the truth of such special circumstance.

(c)   If the defendant is found guilty of first degree murder and one or more special circumstances as enumerated in Section 190.2 has been charged and found to be true, his sanity on any plea of not guilty by reason of insanity under Section 1026 shall be determined as provided in Section 190.4. If he is found to be sane, there shall thereupon be further proceedings on the question of the penalty to be imposed. Such proceedings shall be conducted in accordance with the provisions of Sections 190.3 and 190.4.

Sec. 4.   Section 190.1 is added to the Penal Code, to read:

*190.1.   A case in which the death penalty may be imposed pursuant to this chapter shall be tried in separate phases as follows:*

*(a)   The question of the defendant's guilt shall be first determined. If the trier of fact finds the defendant guilty of first degree murder, it shall at the same time determine the truth of all special circumstances charged as enumerated in Section 190.2 except for a special circumstance charged pursuant to paragraph (2) of subdivision (a) of Section 190.2 where it is alleged that the defendant had been convicted in a prior proceeding of the offense of murder in the first or second degree.*

*(b)   If the defendant is found guilty of first degree murder and one of the special circumstances is charged pursuant to paragraph (2) of subdivision (a) of Section 190.2 which charges that the defendant had been convicted in a prior proceeding of the offense of murder of the first or second degree, there shall thereupon be further proceedings on the question of the truth of such special circumstance.*

*(c)   If the defendant is found guilty of first degree murder and one or more special circumstances as enumerated in Section 190.2 has been charged and found to be true, his sanity on any plea of not guilty by reason of insanity under Section 1026 shall be determined as provided in Section 190.4. If he is*

Continued on page 41

 **Murder. Penalty—Initiative Statute**

## Argument in Favor of Proposition 7

CHARLES MANSON, SIRHAN SIRHAN, THE ZODIAC KILLER, THE SKID-ROW SLASHER, THE HILLSIDE STRANGLER.

These infamous names have become far too familiar to every Californian. They represent only a small portion of the deadly plague of violent crime which terrorizes law-abiding citizens.

Since 1972, the people have been demanding a tough, effective death penalty law to protect our families from ruthless killers. But, every effort to enact such a law has been thwarted by powerful anti-death penalty politicians in the State Legislature.

In August of 1977, when the public outcry for a capital punishment law became too loud to ignore, the anti-death penalty politicians used their influence to make sure that the death penalty law passed by the State Legislature was as weak and ineffective as possible.

That is why 470,000 concerned citizens signed petitions to give you the opportunity to vote on this new, tough death penalty law.

Even if the President of the United States were assassinated in California, his killer would not receive the death penalty in some circumstances. Why? Because the Legislature's weak death penalty law does not apply. Proposition 7 would.

If Charles Manson were to order his family of drug-crazed killers to slaughter your family, Manson would not receive the death penalty. Why? Because the Legislature's death penalty law does not apply to the master mind of a murder such as Manson. Proposition 7 would.

And, if you were to be killed on your way home tonight simply because the murderer was high on dope and wanted the thrill, that criminal would not receive the death penalty. Why? Because the Legislature's weak death penalty law does not apply to every murderer. Proposition 7 would.

Proposition 7 would also apply to the killer of a judge, a prosecutor, or a fireman. It would apply to a killer who murders a citizen in cold blood because of his race or religion or nationality. And, it would apply to all situations which are covered by our current death penalty law.

In short, your YES vote on Proposition 7 will give every Californian the protection of the nation's toughest, most effective death penalty law.

A long and distinguished list of judges and law enforcement officials have agreed that Proposition 7 will provide them with a powerful weapon of deterrence in their war on violent crime.

Your YES vote on Proposition 7 will help law enforcement officials to stop violent crime—NOW.

JOHN V. BRIGGS
*Senator, State of California*
*35th District*

DONALD H. HELLER
*Attorney at Law*
*Former Federal Prosecutor*

DUANE LOWE
*President, California Sheriffs' Association*
*Sheriff of Sacramento County*

## Rebuttal to Argument in Favor of Proposition 7

The argument for Proposition 7 is strictly false advertising.

- It would not affect the Charles Manson and Sirhan Sirhan cases. They were sentenced under an old law, thrown out by the courts because it was improperly written.
- As for the "zodiac killer", "hillside strangler" and "skid-row slasher", *they were never caught*. Even the nation's "toughest" death penalty law cannot substitute for the law enforcement work necessary to apprehend suspects still on the loose.

But you already know that.

Regardless of the proponents' claim, no death penalty law—neither Proposition 7 nor the current California law—can guarantee the *automatic* execution of all convicted murderers, let alone suspects not yet apprehended.

California has a strong death penalty law. Two-thirds of the Legislature approved it in August, 1977, after months of careful drafting and persuasive lobbying by law enforcement officials and other death penalty advocates.

The present law is *not* "weak and ineffective" as claimed by Proposition 7 proponents. It applies to murder cases like the ones cited.

Whether or not you believe that a death penalty law is necessary to our system of justice, you should vote NO on Proposition 7. It is so confusing that the courts may well throw it out. Your vote on the murder penalty initiative will not be a vote on the death penalty; it will be a vote on a carelessly drafted, dangerously vague and possibly invalid statute.

Don't be fooled by false advertising. READ Proposition 7. VOTE NO.

MAXINE SINGER
*President, California Probation, Parole*
*and Correctional Association*

NATHANIEL S. COLLEY
*Board Member, National Association for the*
*Advancement of Colored People*

JOHN FAIRMAN BROWN
*Board Member, California Church Council*

ANALYSIS CONTINUED:

DIGEST

parole provision.  The new determinable sentence provisions would not affect persons sentenced to death, laws expressly providing life imprisonment, or additional terms of imprisonment.  There are approximately 1,500 inmates currently incarcerated in the Department of Corrections for such offenses.

All prisoners, whether under determinate or indeterminate sentences would be eligible for parole.  Those with determinate sentences would be placed on parole for two years unless parole placement was waived for good cause and the prisoner discharged.  For life terms, the parole period may be up to five years.  The bill provides that the maximum parole periods shall continue to run even if the parolee is returned to custody for parole revocation.  The reincarceration period after parole revocation would be limited to one year.  Therefore, a parolee with a determinate sentence who completes one year of parole and then gets a parole revocation could be returned to prison for one year and at the same time complete his parole.

The term of those who would have indeterminate sentences, i.e., life termers, habitual criminals, etc., would have their term set by a new seven-member Community Release Board which would replace the existing Adult Authority (nine members) and the Women's Board of Terms and Paroles, a part-time board of five members.

Requires the Judicial Council to collect, analyze and distribute quarterly relevant information to trial judges relating to sentencing throughout the state.  The bill further requires the Judicial Council to conduct annual sentencing institutues for trial court judges toward the end of assisting judges in the imposition of appropriate sentences.

FISCAL EFFECT

Appropriation, no.  Fiscal Committee, yes.  Local, no.

Legislative Analyst:  Possible cost to the General Fund during the first 2 1/2 years to be offset by projected savings in the next two years for a net savings of $5.5 million or more over the 4 1/2 year period.  Savings would be anticipated in each subsequent year over present sentencing practices.

COMMENTS

The Attorney General states California was the leader in developing the indeterminate sentence but "we are forced to reluctantly concede it hasn't worked."

Critics say the law breeds frustration, dispair and violence because a prisoner does not know how long he will be in jail.

(g) "Fully Enclosed" means ch........ by a ceiling or roof and by walls on all sides.

(h) "Health Facility" has the meaning set forth in Section 1250 of the Health and Safety Code, whether operated by a ... ublic or private entity.

(i) "Place of Employment" means any area under the control of a public or private employer which employees normally frequent during the course of employment but to which members of the public are not normally invited, including, but not limited to, work areas, employee lounges, restrooms, meeting rooms, and employee cafeterias. A private residence is not a "place of employment."

(j) "Polling Place" means the entire room, hall, garage, or other facility in which persons cast ballots in an election, but only during such time as election business is being conducted.

(k) "Private Hospital Room" means a room in a health facility containing one bed for patients of such facility.

(l) "Public Place" means any area to which the public is invited or in which the public is permitted or which serves as a place of volunteer service. A private residence is not a "public place." Without limiting the generality of the foregoing, "public place" includes:

(i) arenas, auditoriums, galleries, museums, and theaters;

(ii) business establishments dealing in goods or services to which the public is invited or in which the public is permitted;

(iii) instrumentalities of public transportation while operating within the boundaries of the State of California;

(iv) facilities or offices of physicians, dentists, and other persons licensed to practice any of the healing arts regulated under Division 2 of the Business and Professions Code;

(v) elevators in commercial, governmental, office, and residential buildings;

(vi) public restrooms;

(vii) jury . ..... and juror waiting rooms;

(viii) polling places;

(ix) courtesy vehicles. .

(m) "Restaurant" has the meaning set forth in Sectio. 25522 of the Health and Safety Code except that the ter. "restaurant" does not include an employee cafeteria or a ta ern or cocktail lounge if such tavern or cocktail lounge is "bar" pursuant to Section 25939(a).

(n) "Retail Tobacco Store" means a retail store used pri marily for the sale of smoking products and smoking accesso ries and in which the sale of other products is incidenta. "Retail tobacco store" does not include a tobacco departmen of a retail store commonly known as a department store.

(o) "Rock Concert" means a live musical performanc commonly known as a rock concert and at which the mus. cians use sound amplifiers.

(p) "Semi-Private Hospital Room" means a room in health facility containing two beds for patients of such facility

(q) "Smoking" means and includes the carrying or holdin of a lighted cigarette, cigar, pipe, or any other lighted smol ing equipment used for the practice commonly known a smoking, or the intentional inhalation or exhalation of smok from any such lighted smoking equipment."

SECTION 2:   Severability

If any provision of Chapter 10.7 of the Health and Safet Code or the application thereof to any person or circumstance is held invalid, any such invalidity shall not affect other provi sions or applications of said Chapter which can be given effec without the invalid provision or application, and to this end the provisions of said Chapter are severable.

SECTION 3:   Effective Date

Chapter 10.7 of the Health and Safety Code becomes effec tive 90 days after approval by the electorate.

---

TEXT OF PROPOSITION 6—Continued from page 29

truth of the charges upon which a finding of probable cause was based and whether such charges. If found to be true, render the employee unfit for service. This hearing shall be held in private session in accordance with Gov't. Code § 54957, unless the employee requests a public hearing. The governing board's decision as to whether the employee is unfit for service shall be made within thirty (30) working days after the conclusion of this hearing. A decision that the employee is unfit for service shall be determined by not less than a simple majority vote of the entire board. The written decision shall include findings of fact and conclusions of law.

(f) Factors to be considered by the board in evaluating the charges of public homosexual activity or public homosexual conduct in question and in determining unfitness for service shall include, but not be limited to: (1) the likelihood that the activity or conduct may adversely affect students or other employees; (2) the proximity or remoteness in time or location of the conduct to the employee's responsibilities; (3) the extenuating or aggravating circumstances which, in the judg

ment of the board, must be examined in weighing the evi dence; and (4) whether the conduct included acts, words o. deeds, of a continuing or comprehensive nature which woul. tend to encourage, promote, or dispose schoolchildren towar. private or public homosexual activity or private or public homosexual conduct.

(g) If, by a preponderance of the evidence, the employee is found to have engaged in public homosexual activity or public homosexual conduct which renders the employee unfi. for service, the employee shall be dismissed from employ ment. The decision of the governing board shall be subject t. judicial review.

SECTION 4.   Severability Clause

If any provision of this enactment or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or application of this enact ment which can be given effect without the invalid provision of application, and to this end the provisions of this enactment are severable.

---

TEXT OF PROPOSITION 7—Continued from page 33

found to be sane, there shall thereupon be further proceedings on the question of the penalty to be imposed. Such proceedings shall be conducted in accordance with the provisions of Section 190.3 and 190.4.

Sec. 5.   Section 190.2 of the Penal Code is repealed.

190.2.   The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which

one or more of the following special circumstances has been charged and specially found, in a proceeding under Section 190.4, to be true:

(m)   The murder was intentional and was carried out pursu ant to agreement by the person who committed the murder to accept a valuable consideration for the act of murder from any person other than the victim;

(b)   The defendant, with the intent to cause death, physi

~~cally aided or committed such act or acts causing death; and the murder was willful, deliberate, and premeditated, and was perpetrated by means of a destructive device or explosion.~~

~~(c) The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts causing death and any of the following additional circumstances exists:~~

~~(1) The victim is a peace officer as defined in Section 830.1, subdivision (a) or (b) of Section 830.2, subdivision (a) or (b) of Section 830.3, or subdivision (b) of Section 830.5, who, while engaged in the performance of his duty was intentionally killed, and the defendant knew or reasonably should have known that such victim was a peace officer engaged in the performance of his duties.~~

~~(2) The murder was willful, deliberate, and premeditated, the victim was a witness to a crime who was intentionally killed for the purpose of preventing his testimony in any criminal proceeding, and the killing was not committed during the commission or attempted commission of the crime to which he was a witness.~~

~~(3) The murder was willful, deliberate, and premeditated and was committed during the commission or attempted commission of any of the following crimes:~~

~~(i) Robbery in violation of Section 211;~~

~~(ii) Kidnapping in violation of Section 207 or 209. Brief movements of a victim which are merely incidental to the commission of another offense and which do not substantially increase the victim's risk of harm over that necessarily inherent in the other offense do not constitute a violation of Section 209 within the meaning of this paragraph.~~

~~(iii) Rape by force or violence in violation of subdivision (2) of Section 261; or by threat of great and immediate bodily harm in violation of subdivision (3) of Section 261;~~

~~(iv) The performance of a lewd or lascivious act upon the person of a child under the age of 14 years in violation of Section 288;~~

~~(v) Burglary in violation of subdivision (1) of Section 460 of an inhabited dwelling house with an intent to commit grand or petit larceny or rape.~~

~~(4) The murder was willful, deliberate, and premeditated, and involved the infliction of torture. For purposes of this section, torture requires proof of an intent to inflict extreme and prolonged pain.~~

~~(5) The defendant has in this proceeding been convicted of more than one offense of murder of the first or second degree, or has been convicted in a prior proceeding of the offense of murder of the first or second degree. For the purpose of this paragraph an offense committed in another jurisdiction which if committed in California would be punishable as first or second degree murder shall be deemed to be murder in the first or second degree.~~

~~(d) For the purposes of subdivision (c), the defendant shall be deemed to have physically aided in the act or acts causing death only if it is proved beyond a reasonable doubt that his conduct constitutes an assault or a battery upon the victim or if by word or conduct he orders, initiates, or coerces the actual killing of the victim.~~

Sec. 6.  Section 190.2 is added to the Penal Code, to read:

190.2   (a)   The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.1, to be true:

(1)  The murder was intentional and carried out for financial gain.

(2)  The defendant was previously convicted of murder in the first degree or ... degree. For the purpose of this paragraph an offense committed in another jurisdiction which if committed in California would be punishable as first or second degree murder shall be deemed murder in the first or second degree.

(3)  The defendant has in this proceeding been convicted of more than one offense of murder in the first or second degree.

(4)  The murder was committed by means of a destructive device, bomb, or explosive planted, hidden or concealed in any place, area, dwelling, building or structure, and the defendant knew or reasonably should have known that his act or acts would create a great risk of death to a human being or human beings.

(5)  The murder was committed for the purpose of avoiding or preventing a lawful arrest or to perfect, or attempt to perfect an escape from lawful custody.

(6)  The murder was committed by means of a destructive device, bomb, or explosive that the defendant mailed or delivered, attempted to mail or deliver, or cause to be mailed or delivered and the defendant knew or reasonably should have known that his act or acts would create a great risk of death to a human being or human beings.

(7)  The victim was a peace officer as defined in Section 830.1, 830.2, 830.3, 830.31, 830.35, 830.36, 830.4, 830.5, 830.5a, 830.6, 830.10, 830.11 or 830.12, who, while engaged in the course of the performance of his duties was intentionally killed, and such defendant knew or reasonably should have known that such victim was a peace officer engaged in the performance of his duties; or the victim was a peace officer as defined in the above enumerated sections of the Penal Code, or a former peace officer under any of such sections, and was intentionally killed in retaliation for the performance of his official duties.

(8)  The victim was a federal law enforcement officer or agent, who, while engaged in the course of the performance of his duties was intentionally killed, and such defendant knew or reasonably should have known that such victim was a federal law enforcement officer or agent, engaged in the performance of his duties; or the victim was a federal law enforcement officer or agent, and was intentionally killed in retaliation for the performance of his official duties.

(9)  The victim was a fireman as defined in Section 245.1, who while engaged in the course of the performance of his duties was intentionally killed, and such defendant knew or reasonably should have known that such victim was a fireman engaged in the performance of his duties.

(10)  The victim was a witness to a crime who was intentionally killed for the purpose of preventing his testimony in any criminal proceeding, and the killing was not committed during the commission, or attempted commission of the crime to which he was a witness; or the victim was a witness to a crime and was intentionally killed in retaliation for his testimony in any criminal proceeding.

(11)  The victim was a prosecutor or assistant prosecutor or a former prosecutor or assistant prosecutor of any local or state prosecutor's office in this state or any other state, or a federal prosecutor's office and the murder was carried out in retaliation for or to prevent the performance of the victim's official duties.

(12)  The victim was a judge or former judge of any court of record in the local, state or federal system in the State of California or in any other state of the United States and the murder was carried out in retaliation for or to prevent the performance of the victim's official duties.

(13)  The victim was an elected or appointed official or former official of the Federal Government, a local or State government of California, or of any local or state government of any other state in the United States and the killing was

intentionally carried out in retaliation. ~~~~~~ to prevent the performance of the victim's official duties.

(14) The murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity, as utilized in this section, the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is unnecessarily torturous to the victim.

(15) The defendant intentionally killed the victim while lying in wait.

(16) The victim was intentionally killed because of his race, color, religion, nationality or country of origin.

(17) The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies:

(i) Robbery in violation of Section 211.

(ii) Kidnapping in violation of Sections 207 and 209.

(iii) Rape in violation of Section 261.

(iv) Sodomy in violation of Section 286.

(v) The performance of a lewd or lascivious act upon person of a child under the age of 14 in violation of Section 288.

(vi) Oral copulation in violation of Section 285a.

(vii) Burglary in the first or second degree in violation of Section 460.

(viii) Arson wrecking in violation of Section 447.

(ix) Train wrecking in violation of Section 219.

(18) The murder was intentional and involved the infliction of torture. For the purpose of this section torture requires proof of the infliction of extreme physical pain no matter how long its duration.

(19) The defendant intentionally killed the victim by the administration of poison.

(b). Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case, in which one or more of the special circumstances enumerated in paragraphs (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), or (19) of subdivision (a) of this section has been charged and specially found under Section 190.4 to be true.

The penalty shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5.

Sec. 7. Section 190.3 of the Penal Code is repealed.

~~190.3.   If the defendant has been found guilty of murder in the first degree, and a special circumstance has been charged and found to be true, or if the defendant may be subject to the death penalty after having been found guilty of violating subdivision (a) of Section 1672 of the Military and Veterans Code, or Section 37, 128, 219 or 4500 of this code, the trier of fact shall determine whether the penalty shall be death or life imprisonment without possibility of parole. In the proceedings on the question of penalty, evidence may be presented by both the people and the defendant as to any matter relevant to aggravation, mitigation, and sentence, including, but not limited to, the nature and circumstances of the present offense, the presence or absence of other criminal activity by the defendant which involved the use or attempted use of force or violence or which involved the expressed or implied threat to use force or violence, and the defendant's character, background, history, mental condition and physical condition.~~

~~However, no evidence shall be admitted regarding other criminal activity by the defendant which did not involve the use or attempted use of force or violence or which did not involve the expressed or implied threat to use force or violence. As used in this section, criminal activity does not require a conviction.~~

~~However, in no event shall evidence of prior criminal activi-~~

~~ity be admitted   ~~~~~~  offense for which the defendant was prosecuted and was acquitted. The restriction on the use of this evidence is intended to apply only to proceedings conducted pursuant to this section and is not intended to affect statutory or decisional law allowing such evidence to be used in other proceedings.~~

~~Except for evidence in proof of the offense or special circumstances which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time, as determined by the court, prior to the trial. Evidence may be introduced without such notice in rebuttal to evidence introduced by the defendant in mitigation.~~

~~In determining the penalty the trier of fact shall take into account any of the following factors if relevant:~~

~~(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.~~

~~(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the expressed or implied threat to use force or violence.~~

~~(c) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.~~

~~(d) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.~~

~~(e) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.~~

~~(f) Whether or not the defendant acted under extreme duress or under the substantial domination of another person.~~

~~(g) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or the effects of intoxication.~~

~~(h) The age of the defendant at the time of the crime.~~

~~(i) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.~~

~~(j) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.~~

~~After having heard and received all of the evidence, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall determine whether the penalty shall be death or life imprisonment without the possibility of parole.~~

Sec. 8. Section 190.3 is added to the Penal Code, to read:

190.3.   If the defendant has been found guilty of murder in the first degree, and a special circumstance has been charged and found to be true, or if the defendant may be subject to the death penalty after having been found guilty of violating subdivision (a) of Section 1672 of the Military and Veterans Code or Sections 37, 128, 219, or 4500 of this code, the trier of fact shall determine whether the penalty shall be death or confinement in state prison for a term of life without the possibility of parole. In the proceedings on the question of penalty, evidence may be presented by both the people and the defendant as to any matter relevant to aggravation, mitigation, and sentence including, but not limited to, the nature and circumstances of the present offense, any prior felony conviction or convictions whether or not such conviction or convictions involved a crime of violence, the presence or absence of other criminal activity by the defendant which involved the use or attempted use of force or violence or which involved

the express or implied threat to use ... violence, and the defendant's character, background, history, mental condition and physical condition.

However, no evidence shall be admitted regarding other criminal activity by the defendant which did not involve the use or attempted use of force or violence or which did not involve the express or implied threat to use force or violence. As used in this section, criminal activity does not require a conviction.

However, in no event shall evidence of prior criminal activity be admitted for an offense for which the defendant was prosecuted and acquitted. The restriction on the use of this evidence is intended to apply only to proceedings pursuant to this section and is not intended to affect statutory or decisional law allowing such evidence to be used in any other proceedings.

Except for evidence in proof of the offense or special circumstances which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the court, prior to trial. Evidence may be introduced without such notice in rebuttal to evidence introduced by the defendant in mitigation.

The trier of fact shall be instructed that a sentence of confinement to state prison for a term of life without the possibility of parole may in future after sentence is imposed, be commuted or modified to a sentence that includes the possibility of parole by the Governor of the State of California.

In determining the penalty, the trier of fact shall take into account any of the following factors if relevant:

(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.

(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.

(c) The presence or absence of any prior felony conviction.

(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the affects of intoxication.

(i) The age of the defendant at the time of the crime.

(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.

After having heard and received all of the evidence, and after having heard and considered the arguments of counsel, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall impose a sentence of death if the trier of fact concludes that the aggravating circumstances outweigh the mitigating circumstances. If the trier of fact deter-

mines that the ...ting circumstances outweigh the aggravating circumstances the trier of fact shall impose a sentence of confinement in state prison for a term of life without the possibility of parole.

Sec. 9. Section 190.4 of the Penal Code is repealed.

~~190.4. (a) Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to subdivision (b) of Section 190.1.~~

~~In case of a reasonable doubt as to whether a special circumstance is true, the defendant is entitled to a finding that it is not true. The trier of fact shall make a special finding that each special circumstance charged is either true or not true. Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.~~

~~If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty the trier of fact shall be a jury unless a jury is waived by the defendant and by the people.~~

~~If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing; and neither the finding that any of the remaining special circumstances charged is not true, nor if the trier of fact is a jury, the inability of the jury to agree on the issue of the truth or untruth of any of the remaining special circumstances charged, shall prevent the holding of the separate penalty hearing.~~

~~In any case in which the defendant has been found guilty by a jury, and the jury has been unable to reach a unanimous verdict that one or more of the special circumstances charged are true, and does not reach a unanimous verdict that all the special circumstances charged are not true, the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury, nor shall such jury retry the issue of the truth of any of the special circumstances which were found by a unanimous verdict of the previous jury to be untrue. If such new jury is unable to reach the unanimous verdict that one or more of the special circumstances it is trying are true, the court shall dismiss the jury and impose a punishment of confinement in state prison for life.~~

~~(b) If defendant was convicted by the court sitting without a jury, the trier of fact at the penalty hearing shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and the people.~~

~~If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and impose a punishment of confinement in state prison for life without possibility of parole.~~

~~(c) If the trier of fact which convicted the defendant of a crime for which he may be subjected to the death penalty was a jury, the same jury shall consider any plea of not guilty by reason of insanity pursuant to Section 1026, the truth of any special circumstances which may be alleged, and the penalty to be applied, unless for good cause shown the court dismisses that jury in which case a new jury shall be drawn. The court shall state facts in support of the finding of good cause upon the record and cause them to be entered into the minutes.~~

(b) In any case in which the defendant may be subjected to the death penalty, evidence presented at any prior phase of the trial, including any proceeding upon a plea of not guilty by reason of insanity pursuant to Section 1026, shall be considered at any subsequent phase of the trial, if the trier of fact the prior phase is the same trier of fact at the subsequent phase.

(e) In every case in which the trier of fact has returned a verdict or finding imposing the death penalty, the defendant shall be deemed to have made an application for modification of such verdict or finding pursuant to subdivision (7) of Section 1181. In ruling on the application the judge shall review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3; and shall make an independent determination as to whether the weight of the evidence supports the jury's findings and verdicts. He shall state on the record the reason for his findings.

The judge shall set forth the reasons for his ruling on the application and direct that they be entered on the Clerk's minutes.

The denial of the modification of a death penalty verdict pursuant to subdivision (7) of Section 1181 shall be reviewed on the defendant's automatic appeal pursuant to subdivision (b) of Section 1239. The granting of the application shall be reviewed on the peoples appeal pursuant to paragraph (6) of subdivision (a) of Section 1238.

The proceedings provided for in this subdivision are in addition to any other proceedings on a defendant's application for a new trial.

Sec. 10. Section 190.4 is added to the Penal Code, to read:

190.4. (a) Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to Subdivision (b) of Section 190.1.

In case of a reasonable doubt as to whether a special circumstance is true, the defendant is entitled to a finding that is not true. The trier of fact shall make a special finding that each special circumstance charged is either true or not true. Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.

If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people.

If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing, and neither the finding that any of the remaining special circumstances charged is not true, nor if the trier of fact is a jury, the inability of the jury to agree on the issue of the truth or untruth of any of the remaining special circumstances charged, shall prevent the holding of a separate penalty hearing.

In any case in which the defendant has been found guilty by a jury, and the jury has been unable to reach a unanimous verdict that one or more of the special circumstances charged are true, and does not reach a unanimous verdict that all the special circumstances charged are not true, the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury, nor shall such jury retry the issue of the truth of any of the

special circumstances which were found by an unanimous verdict of the previous jury to be untrue. If such new jury is unable to reach the unanimous verdict that one or more of the special circumstances it is trying are true, the court shall dismiss the jury and in the court's discretion shall either order a new jury impaneled to try the issues the previous jury was unable to reach the unanimous verdict on, or impose a punishment of confinement in state prison for a term of 25 years.

(b) If defendant was convicted by the court sitting without a jury the trier of fact at the penalty hearing shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and the people.

If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and shall order a new jury impaneled to try the issue as to what the penalty shall be. If such new jury is unable to reach a unanimous verdict as to what the penalty shall be, the court in its discretion shall either order a new jury or impose a punishment of confinement in state prison for a term of life without the possibility of parole.

(c) If the trier of fact which convicted the defendant of a crime for which he may be subject to the death penalty was a jury, the same jury shall consider any plea of not guilty by reason of insanity pursuant to Section 1026, the truth of any special circumstances which may be alleged, and the penalty to be applied, unless for good cause the court discharges that jury in which case a new jury shall be drawn. The court shall state facts in support of the finding of good cause upon the record and cause them to be entered into the minutes.

(d) In any case in which the defendant may be subject to the death penalty, evidence presented at any prior phase of the trial, including any proceeding under a plea of not guilty by reason of insanity pursuant to Section 1026 shall be considered an any subsequent phase of the trial, if the trier of fact of the prior phase is the same trier of fact at the subsequent phase.

(e) In every case in which the trier of fact has returned a verdict or finding imposing the death penalty, the defendant shall be deemed to have made an application for modification of such verdict or finding pursuant to Subdivision 7 of Section 11. In ruling on the application, the judge shall review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3, and shall make a determination as to whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented. The judge shall state on the record the reasons for his findings.

The judge shall set forth the reasons for his ruling on the application and direct that they be entered on the Clerk's minutes. The denial of the modification of the death penalty verdict pursuant to subdivision (7) of Section 1181 shall be reviewed on the defendant's automatic appeal pursuant to subdivision (b) of Section 1239. The granting of the application shall be reviewed on the People's appeal pursuant to paragraph (6).

Sec. 11. Section 190.5 of the Penal Code is repealed.

190.5. (a) Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person who is under the age of 18 years at the time of commission of the crime. The burden of proof as to the age of such person shall be upon the defendant.

(b) Except when the trier of fact finds that a murder was committed pursuant to an agreement as defined in subdivision (a) of Section 190.2, or when a person is convicted of a violation of subdivision (a) of Section 1672 of the Military and

~~Veterans Code, or Section 37, 128, X500; ........ ivision (b) of Section 190.8 of this code, the death penalty shall not be imposed upon any person who was a principal in the commission of a capital offense unless he was personally present during the commission of the act or acts causing death; and intentionally physically aided or committed such act or acts causing death.~~

~~(c) For the purposes of subdivision (b), the defendant shall be deemed to have physically aided in the act or acts causing death only if it is proved beyond a reasonable doubt that his conduct constitutes an assault or a battery upon the victim or if by word or conduct he orders, initiates, or coerces the actual killing of the victim.~~

Sec. 12.   Section 190.5 is added to the Penal Code, to read:

*190.5.   Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person who is under the age of 18 at the time of the commission of the crime. The burden of proof as to the age of such person shall be upon the defendant.*

Sec. 13.   If any word, phrase, clause, or sentence in any section amended or added by this initiative, or any section or provision of this initiative, or application thereof to any person or circumstance, is held invalid, such invalidity shall not

affect any other w.... ..ase, clause, or sentence in any section amended or added by this initiative, or any other section, provisions or application of this initiative, which can be given effect without the invalid word, phrase, clause, sentence, section, provision or application and to this end the provisions of this initiative are declared to be severable.

Sec. 14.   If any word, phrase, clause, or sentence in any section amended or added by this initiative or any section or provision of this initiative, or application thereof to any person or circumstance is held invalid, and a result thereof, a defendant who has been sentenced to death under the provisions of this initiative will instead be sentenced to life imprisonment, such life imprisonment shall be without the possibility of parole.

If any word, phrase, clause, or sentence in any section amended or added by this initiative or any section or provision of this initiative, or application thereof to any person or circumstance is held invalid, and a result thereof, a defendant who has been sentenced to confinement in the state prison for life without the possibility of parole under the provisions of this initiative shall instead be sentenced to a term of 25 years to life in a state prison.

§ 190.4. Special findings on truth of each alleged special circumstance; penalty hearing; application for modification

(a) Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to Subdivision (b) of Section 190.1.

In case of a reasonable doubt as to whether a special circumstance is true, the defendant is entitled to a finding that it is not true. The trier of fact shall make a special finding that each special circumstance charged is either true or not true. Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.

If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people.

If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing, and neither the finding that any of the remaining special circumstances charged is not true, nor if the trier of fact is a jury, the inability of the jury to agree on the issue of the truth or untruth of any of the remaining special circumstances charged, shall prevent the holding of a separate penalty hearing.

In any case in which the defendant has been found guilty by a jury, and the jury has been unable to reach an unanimous verdict that one or more of the special circumstances charged are true, and does not reach a unanimous verdict that all the special circumstances charged are not true, the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury, nor shall such jury retry the issue of the truth of any of the special circumstances which were found by an unanimous verdict of the previous jury to be untrue. If such new jury is unable to reach the unanimous verdict that one or more of the special circumstances it is trying are true, the court shall dismiss the jury and in the court's discretion shall either order a new jury impaneled to try the issues the previous jury was unable to reach the unanimous verdict on, or impose a punishment of confinement in state prison for a term of 25 years.

APPENDIX - 6

# ENROLLED BILL REPORT

| AGENCY | GOVERNOR'S OFFICE | BILL NUMBER SB 42 |
|---|---|---|
| DEPARTMENT, BOARD OR COMMISSION | LEGAL AFFAIRS | AUTHOR Nejedly & Way |

**Senate Bill 42 generally substitutes for the indeterminate law a system of determinate sentences. The bill conceptually moves from a "rehabilitative" model to a "punishment" model as the purpose of imprisonment for crime.** The central purpose of the bill is to insure uniformity in sentencing for similar offenses and to permit a convicted person to know at the outset the length of his term.

With the exception of the most serious violent offenses (which remain indeterminate sentences), the legislation provides for four levels of determinate sentence choices, with three alternatives within each level. The four levels of sentences are (1) 16 months, 2 years or 3 years (this sentencing level applies to all felonies unless otherwise specified in the Penal Code); (2) 2, 3 or 4 years (e.g., bribe, robbery, simple manslaughter); (3) 3, 4 or 5 years (e.g., attempt to kill Governor, simple kidnapping); and (4) 5, 6 or 7 years (e.g., murder in the second degree, rape). These terms represent an average of parole board practice over the past five years utilizing the median time served for various offenses.

The trial judge, upon conviction, sentences the defendant, if imprisonment is ordered, to one of the three sentences prescribed for the specified crime. The judge must prescribe the middle of the three sentence choices unless there is a specific finding of fact indicating mitigating or aggravating circumstance whereby the judge may sentence the defendant to the lower or upper term respectively.

Additionally, in determining the sentence length, the judge must consider other factors such as armed with a deadly weapon, use of a firearm, an excessive taking or damage, the infliction of great bodily harm, additional crimes of which the defendant stands convicted, and the defendant's prior record of felony terms served (with specific provisions for specified dangerous priors), provided such factors are plead and proven. There is a presumption that such factors, if plead and proven, will be utilized to lengthen the sentence unless the judge finds circumstances in mitigation, in which case the judge may strike the additional punishment. Reasons for all sentencing decisions made by the judge are required to be stated on the record. The attached sheet provides a fuller exposition of typical sentences under the bill.

It cannot be known whether sentences imposed under S.B. 42 will be longer or shorter; my guess and that of most law enforcement officers is that sentences will remain roughly the same. Violent crimes by repeat offenders will probably receive slightly longer terms and certain drug-related offenses may receive slightly shorter ones. What is certain is that trial judges will have the discretionary authority to lengthen sentences, should they wish to exercise it. Moreover,

| RECOMMENDATION: SIGN | | | |
|---|---|---|---|
| ANALYST | DATE | LEGAL AFFAIRS SECRETARY J. Anthony Kline | DATE 9/15/76 |

Case 5:24-cv-00721-FLA-MAA    Document 1    Filed 04/05/24    Page 105 of 105   Page ID #:105

after S.B. 42, the Legislature will have the power to lengthen
sentences for particular crimes.  Certain legislators, such as Vas-
concellos, Meade and Kapiloff, opposed S.B. 42 because they believe
the Legislature will abuse this power when the media sensationalizes
a crime, as in the deKaplany case.

For the purpose of promoting uniformity in sentences for similar
offenses, the Judicial Council is required to establish rules for
the trial judge's consideration regarding the following:  placing
the defendant on probation or sentencing to state prison; consider-
ing mitigating and aggravating circumstances; sentencing concur-
rently or consecutively for additional crimes; and imposing addition-
al punishment for prior prison terms, armed with a deadly weapon,
use of a firearm, extensive taking or damage and the infliction of
great bodily injury.  An additional requirement in the bill that the
Judicial Council annually report to the Legislature and the Governor
on sentencing practices in other jurisdictions is intended to provide
a rational means of evaluating future legislative efforts to lengthen
or shorten terms.

The legislation abolishes the Adult Authority and the Women's Board
of Terms and Paroles and establishes a statewide Community Release
Board to make parole determinations regarding both men and women
who continue to be sentenced indeterminately.  The Community Release
Board shall be composed of nine (9) members, all appointed by the
Governor.  Two (2) shall be from the Adult Authority, two (2) from
the Women's Board, and five (5) from anywhere.  The Community Re-
lease Board shall also review sentences to promote uniformity, with
the authority to recommend resentencing of a defendant if the Board
determines that the sentence prescribed by the trial judge is
"disparate".  Pursuant to amendments by Assemblyman McAllister, the
meetings of the Community Release Board are public, hearings are
transcribed, and notice is given to the district attorney, police
chief, defense attorney and others.

The Department of Corrections is required to permit the inmate to
earn a reduction in sentence for good behavior and participation in
prescribed activities while in prison.  Maximum reduction for good-
time is one-third of the term.  Behavior constituting violations of
good-time are specified and a procedure for denial of good-time for
such violations or failure to participate are provided for in the
bill.

A determinate period of parole of one year for those determinately
sentenced and three years for those indeterminately sentenced is
provided for in the legislation, with a provision to revoke parole
for a period of up to 6 months for behavior in violation of the